## White Plains Coal Company v. Teague.

(Decided February 24, 1915.)

### Appeal from Hopkins Circuit Court.

1. Principal and Agent.—Knowledge of the acts of an agent, within the scope of his authority, are imputed to his principal.

2. Principal and Agent—Ratification.—If a principal ratifies an unauthorized act of an agent, it is an adoption of his agency, and the principal is bound by the acts of the agent, if at the time of the ratification the principal was acquainted with the facts.

3. Principal and Agent—Authority of Agent to Bind Principal.—A principal is bound by the acts of an agent as between him and a third party, where the transaction is within the scope of the agent's apparent authority, though not authorized in expressed terms.

4. Principal and Agent.—An agent, who has authority to purchase for cash, does not bind the principal, when he purchases upon credit.

5. Principal and Agent.—If an agent, not authorized to purchase upon credit, does so, and the principal receives the property and holds it, he must pay for it.

6. Principal and Agent.—If a principal ratifies the acts of one, who without authority professes to act for him, he must adopt all of the acts throughout.

7. Principal and Agent—When Corporation Not Chargeable With Notice.—As a rule a corporation is not chargeable with notice of facts, because of knowledge on the part of an officer or agent, where the latter is dealing with the corporation in his own interest, or where for any reason, his interest in the matter is adverse to that of the corporation, so that communication of the knowledge by him can not be presumed.

8. Principal and Agent—When Knowledge of Agent Imputed to Principal.—Where an agent of a corporation is ostensibly acting for his principal and within the apparent scope of his authority as agent, in dealing with an innocent third party, but is really acting for himself, and with the design of cheating the third party or the principal, the law will impute the knowledge of the agent to the corporation.

9. Principal and Agent—Where Obligation of Agent Accepted Principal Not Liable.—As a general rule where a party dealing with an agent, and with knowledge who the principal is, accepts the personal obligation of the agent, the principal is not liable for the debt, but this rule does not apply where the innocent third party is induced by the fraud of the agent to accept such obligation.

GORDON & GORDON & COX for appellant.

JONSON & JENNINGS for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellee, R. P. Teague, is a farmer residing in the neighborhood of White Plains, in Hopkins County, Kentucky. W. F. Shain and A. R. Kampf composed a partnership, who were doing a mercantile and milling business in White Plains. In the latter part of the summer or fall of 1907, W. F. Shain & Company procured a number of options upon the coals in the lands of various persons in that vicinity, and also obtained the parol

agreement of several parties to sell them their coal and mining rights.

On the 27th day of September, 1907, the White Plains Coal Company, a corporation composed of B. H. Scott and others, including W. F. Shain, was organized at Paducah, Kentucky. W. F. Shain was one of the stockholders, and was thereafter made a director of the company. The purpose of the corporation, as appears from Article 3 of its articles of incorporation, was for the purpose of engaging in the business of buying and selling coal and other minerals, coal lands and other mineral lands, leases and options on same, and of buying and selling, and dealing in other lands, and timbers in Kentucky, and also of mining and developing, and operating mines.

On the first day of October, 1907, at a meeting of the stockholders, a resolution was unanimously passed, agreeing to buy and take over for the corporation, all the coal and mineral rights which W. F. Shain and Company had under option, and on the same day a resolution was passed by the board of directors, by which B. H. Scott, the president of the corporation, was given full authority to negotiate with W. F. Shain & Company for the purchase of its options, and to pay for same, and to approve the deeds; in fact the whole contemplated transaction was turned over to B. H. Scott, as president of the corporation. It seems that upon that day, or a few days thereafter, the corporation deposited in a bank in Paducah, something over $9,000.00, and deposited same to the credit of W. F. Shain, as trustee for the White Plains Coal Company, or deposited it to its own credit, and authorized Shain to draw checks upon it, signed by him as W. F. Shain, trustee for the corporation, one or the other; it does not appear which was actually done. If A. R. Kampf had anything to do with the transactions as a partner of W. F. Shain & Company, or appeared in any of the transactions in any way, the record fails to disclose it, but very soon after October 1st, 1907, W. F. Shain began to close the options that he held, and to buy other coal rights and mineral rights in the lands in the community, and to have deeds executed to him, conveying same to him in the name of W. F. Shain, trustee for the White Plains Coal Company, and to pay the vendors for these coals and mining rights, by executing to them checks, signed W. F. Shain, trustee and

etc. Thereafter, from time to time, as he perfected other arrangements for the transfer of coal and mineral rights, the White Plains Coal Company furnished to him other sums of money to pay for these transfers, which he says he deposited to his own credit, and checked out by signing the name of W. F. Shain & Company. The checks, deposit slips and books of these transactions, however, are not put in evidence, neither are the drafts or checks, by which he was furnished these sums of money by the White Plains Coal Company, put in evidence. This continued until in January, or the latter part of February. He received and paid out in purchases for coal and mineral rights, which had been conveyed to him as trustee, as above stated, the sum of $19,000.00, in addition to the $9,000.00 first deposited in the Paducah bank. He made a parol agreement with the appellee, Teague, to purchase the coals underlying his lands for the sum of $740.00. About the last of February, he notified Teague to have a deed executed to him as trustee for the appellant for these coals, and to have it in readiness for him; that he was going to Paducah, and when he returned he would have the money to pay him, and also directed him who to apply to, to prepare the deed, and to take his acknowledgment for same. Teague immediately went to the person designated by Shain, and caused him to prepare the necessary deed, and acknowledged it on the 2d day of March, 1908. On the 6th day of March, 1908, Shain had returned from Paducah, and requested Teague to deliver him the deed, but at that time said that he could not pay him the entire purchase price, but could pay him a portion of it, and would execute to him his individual note, due in ninety days, for the balance of the unpaid purchase money. Teague protested to him that he was expecting to receive the cash, and that he ought to have a lien retained in the deed for his money, if it was not paid. Shain, however, said to him, according to the testimony of Teague, but which Shain denies, that the coal company would pay the note, and that as long as it was executed for the coals, it would be unnecessary for the note to show what it was given for, and that he would have a lien for it, and to further put Teague at ease, said that he would hold the deed, and if the note was not paid within a short time, he would return the deed to Teague, if Teague would return to him the $400.00 note. Teague also stated that it was understood between them at the time that his debt was to be a lien upon the prop-

erty conveyed in the deed, but it should be stated that the consideration expressed in the deed was $1.00, in hand paid, and other valuable considerations.

It does not appear whether Shain acquired any other lands, coal, or mining rights under this arrangement, after this transaction with Teague, or not, but it appears that he had acquired about 2,800 acres in all, and thereafter, on the 26th day of June, he as trustee for the White Plains Coal Company, conveyed all of the lands, coal, and mining rights, to the White Plains Coal Company, including the purchase that he had made from Teague. This deed, appellant accepted, and put upon record. Some time thereafter, but before Teague knew that his deed to Shain as trustee, had been turned over to the appellant, or his coals transferred to the appellant, by Shain, Shain paid him $100.00, as a credit upon the note.

At the time Shain began the negotiations with Teague, he was in failing circumstances, and Teague says that he knew that Shain was insolvent, and that he did not look to him for the payment of the $400.00 note, but relied upon the appellant. Shain became insolvent and left the country, and the appellant refusing to pay Teague the balance yet due him, he instituted this suit in the Hopkins Circuit Court to recover of the appellant the balance due him.

The theory of the case that is advanced by appellee is, that Shain was the agent of the appellant in the transactions with Teague, and that his promise to pay for the property bought from Teague, was the promise of the appellant. Appellant, upon the other hand, denies the agency of Shain, and claims that in the transaction with Teague, that Shain was acting for himself, and not for it; and that it had simply bought from Shain & Company their rights in the lands, and that the deed executed by Teague did not show that there was any unpaid purchase money due him, and concealed any equity which he might have in the property conveyed, and that it was an innocent purchaser for value and without notice. Teague further claims that Shain, being an agent of the appellant, and knowing that the purchase money had not all been paid, that his knowledge was the knowledge of the appellant, and for that reason, that he has a lien upon the property conveyed, as well as a right of recovery against appellant for the amount yet due him.

Appellant further sets up a contention, that although Shain was their agent, yet in the transaction with Teague, that he was acting for himself, and had an interest in the matter inimical to the rights of the appellant, and for that reason it would be inequitable to hold that a notice to him was notice to it.

Upon a trial of the case, the court below rendered judgment against the appellant in favor of the appellee for the amount sued for, and also adjudged him to have a lien to secure the payment of his judgment, upon the property embraced in the deed by him to Shain, as trustee, and the appellant having excepted to the judgment of the court, appeals to this court.

A corporation can only act by and through an agent. The facts and circumstances of this case constrain us to the belief that Shain in his negotiations with and the purchase of the property from appellee was acting in the capacity of agent of the appellant for that purpose, and whatever may have been the private instructions, which the appellant had given to Shain, the acts of the corporation were such that they would necessarily induce the belief upon the part of the appellee that Shain was an agent of the appellant, and clothed with complete power to transact for it the business in hand. While Shain claims that his acts in the role of a trustee for appellant was an assumption of his own, and done without authority from any officer or director of the corporation, the circumstances of the matter, however, lead to a belief otherwise, for it appears from the deposition of Owens, who was a director of the corporation, that a writing was entered into between Scott, the president, and Shain, touching the lands and mineral rights to be purchased at White Plains, which writing, however, has been lost.

The resolution of the board of directors gave Scott complete power to conduct the business with regard to the purchases at White Plains, and the first $9,000.00 furnished to Shain was checked out by him in making the purchases of the property, by checks signed by him as trustee.

It appears that the fact that the bank in which the deposit was made, and which paid the checks, had directions from the corporation to pay out the money upon checks signed by Shain as trustee for it, because it is not to be presumed that the banking institution would

have honored the checks under such circumstance without direct authority to do so from the corporation.

While the agency of Shain cannot be proven by his own declarations as against appellant, the evidence shows that he held himself out as an agent of the corporation at White Plains; that he there gave the checks above mentioned, which were paid by the corporation; and that he had the property conveyed to him by deeds, describing him as a trustee, which of itself is a conclusive circumstance that he was acting for and making purchases for the corporation. Shain, who was in failing circumstances, was engaged in paying out $28,000.00 for the corporation, which was a circumstance strongly indicative to a neighbor like Teague, that he was acting and had authority to act generally for the corporation, for when Teague conveyed his property to Shain, as a trustee, he was obliged to have known that he was selling it to the corporation. The corporation was the *cestui que* trust, the real beneficiary in a conveyance of that kind, and while the legal title was in Shain, the beneficiary title and ownership of the property was vested in the corporation. It would be a very unreasonable thing to conclude that Teague, while engaged in conveying his property to Shain, as a trustee for appellant, really believed or thought that he was selling it to Shain, or was expecting any one else to pay him for it except appellant, although, he was expecting to receive the consideration through Shain.

It does not appear that the property of Teague was included in the (about) 2,800 acres upon which Shain & Company, or Shain, held an option, because the fact develops that Shain had no option upon Teague's property. Thereafter, when Shain by a deed describing himself as a trustee for the appellant, conveyed the legal title to all of the property to the appellant, and which deed Scott, the president, accepted without any question, together with the other circumstances, makes the conclusion that Shain was the agent of the corporation to buy all of this property for it, and to pay for it, irresistible.

Shain was the only agent of the corporation at White Plains engaged in buying the property and transacting its business, and in looking after the lands and renting them, which were a part of the purchases made by him for the corporation.

It is a well settled principle, that the principal as between him and a third party is bound by the acts of his agent, where the contract is within the scope of the agent's apparent authority, though not authorized in express terms. While the contention of the appellant in this case is, that Shain was only authorized to make purchases, and pay cash, that seems to be more of a conclusion that has been arrived at since, than any express term upon that subject.

In 31 Cyc., 1348, it is said: "If purchases are reasonably necessary to enable the agent to accomplish the object of the agency, and no funds are provided to pay for such purchases, the agent has implied power to bind the principal by purchases of such goods upon credit."

While, it is also well settled that an agent, who has authority to purchase only for cash, his principal is not bound for purchases made by him upon credit.

There is no law or equity, however, which will permit the principal to receive the property, which his agent was authorized to buy and make cash payments for, but who has bought upon credit, and then, although holding the property, refuse to pay for it. Latrop v. Commercial Bank, &c., 8 Dana, 114.

If a principal ratifies the acts of one who, without authority, professes to act for him, he must adopt all the acts throughout. He must not be allowed to adopt so much of the assumed agent's acts as are beneficial, and refuse those which are prejudicial. Atkinson v. Howlett, 11 R., 364; Lexington City National Bank v. Rutherford, 12 R., 632.

Shain being the agent of the appellant in the transactions with Teague, the appellant is not only bound by his promises, but must be held to have full notice of all of Shain's acts. Von Bories v. The United Life, Fire and Marine Insurance Co., 8 Bush, 137; Galbraith's Admr. v. Arlington Mutual Life Ins. Co., 12 Bush, 29.

If the acts were unauthorized, the ratification of his acts by accepting a conveyance of the property from him would be an adoption of his agency, if the facts were known to the appellant.

The appellant, however contends that, although Shain might be its agent for the purchase of this property, he had an interest in the transaction inimical and adverse to the interest of the appellant, and therefore his knowledge of the fact that Teague had not been

paid for his property was not notice to it, because he would have an interest in concealing the facts from it. The testimony shows that Shain was to have a small profit out of all the business transacted for the appellant, growing out of the fact that appellant was to pay a certain price for the property secured, and that Shain was to receive for his services whatever sum he could make by purchasing the property at a less amount. This fails to show that he had any interest in the transaction inimical or adverse to the appellant, because that arrangement was well understood between Shain and the appellant, and the appellant was only to pay a certain price, which it was to pay in any event, regardless of what Shain could purchase the property for. It does not appear that Teague knew anything of that arrangement between appellant and Shain. Shain's interest was very antagonistic to Teague's interest, and he did not in any wise represent Teague in the transaction.

It is true, as stated by Clark & Thompson on private corporations, Section 718, sub-section 3, "that as a rule a corporation is not chargeable with notice of facts, because of knowledge on the part of an officer or agent, where the latter is dealing with the corporation in his own interest, or where for any other reason his interest in the matter is adverse to that of the corporation, so that communication of the knowledge by him cannot be presumed."

In this case, however, the dealing in controversy was between the agent and an innocent third party, and in Thompson on Corporations, Section 5227, it is stated, that where the agent of a corporation is ostensibly acting for his principal, and within the apparent scope of his agency in dealing with an innocent third party, but is really acting for himself, and with either the design of cheating that third party, or defrauding his own principal, on grounds of public policy, the law will disregard his secret motive, and impute his knowledge to his principal, to the extent at least of requiring such principal to restore what may have come into his hands through fraud.

In Mustain, Wells & Co. v. Williams Bros., 7 R., 828, it is said: "The statements of an agent concerning the act which he is performing while in the performance, are binding on the principal, and evidence against him."

It is very evident, if the testimony of Teague is to be believed as to what took place between him and Shain

at the time of the delivery of the deed by him to Shain, together with other occurrences which transpired thereafter, that Shain was designing to either perpetrate a fraud upon Teague, or upon the appellant. It seems that by means of his representations made at that time, which appear to be fraudulent, he procured Teague to deliver him the deed. By means of this act of Shain, this property which Teague conveyed to Shain as trustee, passed into the hands and ownership of the appellant, and before it can be allowed to refuse to pay for it as agreed by Shain, it should have disavowed Shain's act, and restored the property to Teague. In place of that, however, it, with constructive notice that the property had not been paid for, accepted a deed to it and is still holding it.

Appellant, however, contends that Teague accepted the personal note of Shain for the balance due, and for that reason he must look only to Shain, and that it is absolved from any obligation to pay Teague. It is true as a general rule, where a party dealing with an agent with knowledge who the principal is, accepts the personal obligation of the agent, that it absolves the principal from the payment of the debt, but this rule does not apply where the innocent third party was procured to accept such obligation by the fraud of an agent. Wilson v. Thompson, 1 Metcalfe, 127.

The appellee testified that he looked to the appellant at all times for the payment of the debt; that he knew at the time of the transaction that Shain was insolvent, and that he could not recover anything of him, and only accepted the note of Shain upon his promise that the appellant would pay it in a very short time, and that he would hold the deed that Teague had made him until that was done, but which he fraudulently failed to do.

The cases of Davis v. Boone County Deposit Bank, 80 S. W., 161, and Wyeth & Bro. v. Renz-Boles Co., 23 K. L. R., 2337, cited by counsel for appellant, are not analagous to the case at bar. In the last named case, a factor with a large stock of goods in his possession belonging to his principal, transferred them to a corporation of which he was president, and it was held that his knowledge of the ownership of the goods by his principal, could not be imputed to the corporation. In the first named case, the president of a bank, with knowledge of the infirmities in a negotiable note discounted

in the bank, it was held that his knowledge could not be imputed to the bank, because the interest of the president of 'he bank was adverse to the bank. The opinion fails to show wherein the president's interests were inimical to the bank.

In the case of Citizens Bank v. Walden, 52 S. W., 953, which was a case where the cashier of a bank, who was also the agent of another corporation, sold stock in the other corporation, and took notes therefor, and transferred them to the bank, and discounted them in the bank, upon a plea of fraud of the payors, that the cashier fraudulently induced them to buy the stock and execute the notes, his knowledge was imputed to the bank, and in the case of Mutual Life Insurance Co. v. Chosen Friends' Lodge, et al., 93 S. W., 1044, one who was agent of the insurance company, and treasurer of the Friends' Lodge, borrowed money from the insurance company, and pledged four bonds, assignable by delivery, in his hands as treasurer of the Friends' Lodge, as security, and upon a suit by the Friends' lodge against the insurance company for converting the bonds, it was held by this court that the knowledge of the agent of the insurance company, that the bonds did not belong to him, when he pledged them, was to be imputed to the insurance company.

The authorities cited showing that a trustee has no authority to execute a note by reason of being trustee, are not applicable to this case, because no recovery is sought upon the note which Shain executed to the appellee, but it is treated as a mere nullity on account of the fraud of Shain in procuring its execution.

It is therefore adjudged that the judgment appealed from be affirmed.