## Penn Mutual Life Insurance Company v. Roberts.

(Decided February 27, 1925.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Insurance—Allegation that Insured was so Insane at Time of Suicide he did Not Realize Consequence of Act was Good Plea of Avoidance.—Allegation that insured was so insane at time of suicide he did not know nature or realize consequence of his act was good plea of avoidance of clause against suicide within year.

2. New Trial—Defendant Not Entitled to New Trial for Surprise.—Where insurer, after learning at beginning of trial that alleged suicide note bore date of March 3 instead of April 3, did not ask for continuance and proceeded with trial endeavoring to convince jury that note was written April 3, it was not entitled to new trial on ground of surprise on learning during trial that note bore date of March 3.

3. Time—"3/3/21" is March 3, 1921.—"3/3/21" is March 3, 1921.

4. New Trial—Denial of New Trial for Newly Discovered Evidence Held Within Discretion.—Where defendant waived continuance offered to enable it more fully to meet issues as to whether insured committed suicide and knew at beginning of trial that alleged suicide note was dated March 3, instead of April 3, time of death, and all evidence on issue as to date of note was cumulative, there was no abuse of discretion in denying new trial for newly discovered evidence.

5. New Trial—One Chancing Trial Cannot Complain Because he could have Produced More Evidence than he Considered Necessary for Purpose.—One may not take chances on trial and later complain of result thereof because he could have produced more evidence in his favor than he then considered necessary for his purpose.

6. Insurance—Evidence as to Insured's Insanity at Time of Death Held Sufficient for Jury.—Evidence as to insanity of insured at time of alleged death by his own hand held sufficient for jury.

7. Appeal and Error—Any Error in Permitting Plaintiff to Introduce Her Pleadings in Evidence Held Without Prejudice to Defendant.—Where jurors were necessarily informed of issues they were to try, any error in permitting plaintiff to introduce her pleadings in evidence was without prejudice to defendant.

8. Appeal and Error—Juror's Statement as to Profits in Jewelry Business Held Without Prejudice to Defendant.—In action on insurance policy on life of jeweler, statements of juror that from his experience in jewelry business he knew profits on goods on

consignment were about 100 per cent. held without prejudice to insurer.

WM. MARSHALL BULLITT and JOSEPH S. CONWELL for appellant.

GEO. B. MARTIN and GORDON & LAURENT for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is an action by the beneficiary to collect five insurance policies, aggregating $38,000.00 issued by appellant upon the life of her husband, C. W. Roberts, a little less than a year before his death, which occurred April 3d, 1921.    Each policy contains the usual clause against suicide within a year, and plaintiff, in an amended petition filed before answer, admitted suicide, but alleged that the insured was so insane at the time he did not know the nature or realize the consequence of his act, which, under the uniform decisions of this court, is a good plea in avoidance.    National Life Ins. Co. v. Watson, Extrx., 194 Ky. 355, 239 S. W. 35.

Issue was joined on this plea, much evidence taken thereon by deposition, and the case set for trial on May 17, 1923.    On the afternoon of May 16, plaintiff was permitted, over defendant's objection and exception, to withdraw her amended petition admitting suicide, and to file a reply denying same.    In support of her motion thus late to amend her pleadings, plaintiff filed an affidavit alleging that her husband's death occurred in Huntington, West Virginia; that she at the time was with her father in Memphis, Tennessee; that her admission of suicide was made upon the faith of such a statement in the coroner's certificate of his death, and that in preparing her case for trial she had discovered there was no evidence of her husband's having committed suicide.

In permitting the amended petition to be withdrawn and the reply to be filed the court traversed the latter of record, and because of the change in issues offered defendant a continuance.    Defendant took time to consider the matter, and the next morning announced ready for trial, after a stipulation had been signed by the parties permitting it to introduce in evidence an unauthenticated copy, as a true copy, of the coroner's certificate of the insured's death, in which the cause of his death was stated to have been "suicide from cyanide of potassium," and agreeing that the laws of West Virginia re-

quired such a certificate to be made and filed, and to state therein the time, place and cause of decedent's death.

As the issues were finally formed, the burden was upon the defendant, and it introduced in evidence not only its own depositions but those taken by plaintiff as well, together with the oral testimony of three witnesses, the so-called suicide note, and plaintiff's amended petition containing the admission of suicide. Thereupon plaintiff offered in evidence the entire record, which was admitted over defendant's objection and exception.

Defendant then moved for a directed verdict, which motion was overruled, and the case was submitted to the jury upon the two issues as to whether insured had committed suicide, and if so, whether at the time he was so insane that he did not know the nature of his act.

The jury returned a verdict for plaintiff, judgment was entered thereon, and, defendant's motion for a new trial having been overruled, it prosecuted this appeal.

The grounds urged for reversal are that the court erred: (1) In refusing a new trial because of newly discovered evidence, (2) in submitting to the jury any question of insured's mental condition, (3) in permitting plaintiff to read to the jury her own pleadings, and (4) in refusing a new trial because of the failure of the court to discharge the jury after one of the jurors had made statements from his own experience upon a vital point in the case.

As the insured died in Huntington, W. Va., and the trial was to be had in Louisville, Ky., most of the proof had to be taken by deposition, and while self-destruction was admitted by plaintiff's pleadings. It was brought out in that evidence, however, that insured and his friend, J. M. Parker, had been living for several weeks at the Frederick Hotel in Huntington, where deceased was engaged in the jeweler's business, and that they occupied rooms on the same floor; that they went up on the elevator together about 11 o'clock Saturday night, April 2d; that about eleven o'clock the next morning, Parker and Mr. O'Neal, manager of the hotel, forced open the door to decedent's room and found him dead, lying across the bed, with most of his clothing on; that there was an unsigned note, in decedent's handwriting, on the dresser, which was referred to as a "suicide note;" and beside the bed an empty bottle and glass, in both of which there was a white sediment; that there had been no autopsy or chemical examination of the contents of the bottle or

glass, and that the coroner, without any opinion as a physician as to the cause of decedent's death, had concluded and stated in his certificate that it was "suicide from cyanide of potassium," because of the above circumstances and the fact that jewelers used in their business cyanide of potassium; and that the so-called suicide note was in the possession of plaintiff.

Only one of these witnesses was asked about the date of the note, and while he remembered and stated its contents in substance, he did not remember its date, and all of these witnesses seem to have assumed that it was written upon the night of assured's death, namely, April 3d, 1921. The note however bore date "3/3/21," which is, of course, March 3d, 1921, of which fact defendant and his counsel had not been informed when they waived a continuance and announced ready for trial. This, however, was brought sharply to their attention by counsel for plaintiff in their opening statement of the case to the jury, when that fact was commented upon as evidence that the note was not in fact a suicide note because not written at the time of decedent's death but 30 days prior thereto.

The note is written upon a letterhead of the Frederick Hotel, and, omitting the heading, reads as follows:

"3/3/21 (1 A. M.)

"I have lost my mind. This is being written during a period of partial sanity. I want Mr. J. M. Parker in room 212 to take charge of my body, and arrange about getting it to Memphis, where my wife is, for burrial. First communicate with her at 1961 Union Ave., Memphis, Tenn., and see if she wants me burried here or brought there for burrial. I want him to see that my wife gets my insurance properly paid over to her, which at this time is over $40,000.00, also a $2,000.00 policy to my father & mother at Buchanan, Ky."

The importance of the true date of this note upon both questions at issue is obvious, since if written upon the night of insured's death it furnished much stronger evidence of suicide than if written a month before, and is by its terms almost, if not conclusive, proof that when written insured contemplated some action which he knew would result in his death. That this was clearly realized by the parties during the trial would necessarily be pre-

sumed, even if it were not proven, as it is, by the fact that it was argued by plaintiff that the note was of but little probative value upon either of the two issues involved because written a month theretofore, and by counsel for defendant that it was conclusive upon both of these questions against the plaintiff because it was written on the night of the insured's death, despite the fact it bore an earlier date, and that this was due to a mistake by the decedent in dating the note.

Defendant, after learning at the beginning of the trial that the note bore date of March 3d instead of April 3d, did not ask for a continuance, but, without objection, proceeded with the trial and endeavored, with the evidence it had, to convince the jury that it was in fact written on April 3d rather than March 3d as stated therein, and that the death was not only suicide but that decedent was not at the time so insane that he did not know the nature or consequence of his act.

It is therefore clear that defendant was not entitled to a new trial upon the ground of surprise in learning during the trial, that the note bore date of March 3d instead of April 3d, and it is not so contended.

It is however most earnestly insisted that such surprise should excuse its failure to produce upon the trial other and more convincing evidence it now has, that the note was written on April 3d and could not have been written on March 3d; and that decedent's death was in fact caused by cyanide of potassium poisoning.

The argument in support of this contention is more ingenious than convincing. All of this evidence was clearly cumulative. All of it was as easily obtainable, and its sources as well known before as after the trial. Any kind of diligence after the realization of a need therefor would have produced it as well one time as another. It is therefore clear that the only reason it was not produced upon the trial was that appellant, believing it had sufficient evidence on both questions in issue to win the case, waived the continuance offered to enable it more fully to meet the issues as finally formed, and agreed to try them with what evidence it had.

That this was the true situation when, before the trial, the offered continuance was waived, is attested by the fact that defendant agreed to a trial with such evidence as it then had, if permitted to include therein an unauthenticated copy of the coroner's certificate. That this also was true during the progress of the trial is

shown by the fact that there was no request for a continuance to enable defendant to produce this additional evidence, even after it knew that the note bore date of March 3d and because thereof plaintiff was contending it was not evidence of suicide on April 3d, or the condition of decedent's mind at that time.

A party may not thus take his chances upon a trial and later complain of the result thereof because he could have produced more evidence in his favor than he then considered necessary for his purposes.

It follows, the court did not abuse a sound discretion in denying a new trial upon the ground of newly discovered evidence.

2. The argument that the court erred in submitting to the jury any question of decedent's mental condition at the time of his death is based in the main upon the assumption that the suicide note was written at that time, and shows on its face that decedent then contemplated doing some act with a full realization that it would result in his death.

Conceding the force of this argument, if, as assumed by defendant, the note was written on April 3d, its force is certainly weakened if not entirely dissipated if the note was written, as the date it bears indicates, on March 3d, since the question at issue was the condition of his mind at the time of his death, and not thirty or any other number of days theretofore.

It is further contended in this connection, that there was no evidence that decedent, at the time of his death, was so insane that he did not know the nature of his act, if in fact he committed suicide, but to this we cannot agree. That he was very nervous and much disturbed about the condition of his business affairs is not disputed, and there is some evidence that for some time before his death, he was not normal mentally, and at times was not rational. This evidence, considered in connection with the circumstances indicating suicide, was clearly sufficient to carry the case to the jury, if, as there was evidence to show, the suicide note was not written at the time of his death, since, aside from the note, it is of the same character and quite as strong as that held sufficient for the purpose in many like cases.

3. With reference to the complaint that the court erred in permitting plaintiff to introduce in evidence all her pleadings, little need be said, even assuming they

were read to the jury, about which the record is silent and counsel do not agree. In view of the fact that appellant had introduced in evidence a part of the record, namely, plaintiff's amended petition in which, soon after the death, she had admitted suicide, as clearly it had the right to do, it would seem it was not error, under a familiar rule of evidence, to permit her to introduce the whole of the record showing the withdrawal of that pleading before trial, and the substitution therefor of a denial of suicide.

But whether this be true or not we need not now decide, since, even if it might be conceded this was error, it could not possibly have been prejudicial, and is not therefore ground for a reversal, since the jurors were necessarily informed of the issues they were to try, by the court's instructions.

4. The final complaint relates to a statement made by one of the jurors while questioning a witness. The statement was to the effect that the juror, from his experience in the jewelry business, knew that profits on goods shipped on consignment amounted to about 100 per cent. Appellant's witness, Kelley, testified on the same subject, "The margin of profit on that business of his ranged anywhere from one to 400 per cent."

The court promptly informed the witness he had no right to make any statement based on his own experience, but did not admonish the jury not to consider it.

Conceding, as is claimed, that the court erred in failing so to do, we find nothing in connection with this incident, or in the juror's statement, that could have been prejudicial to the appellant.

Judgment affirmed.