## Creech et al. v. Disney.

May 9, 1941.

444

H. C. Clay & Sons for appellant.

E. L. Morgan for appellee.

Opinion of the Court by Judge Fulton—Affirming.

This action was filed by the appellee, D. H. Disney, against the appellants, Jacob Creech and wife, to compel them to execute to him a deed for two lots purchased by him at an auction sale at the price of $600. Appellants admitted their obligation to convey the lots to appellee and offered to execute the deed conditioned on his payment of $400 which they claimed was due as unpaid purchase money. The chancellor, upon proof heard, adjudged that the entire purchase money had been paid by appellee and directed appellants to execute and deliver to him a deed. Appellants are appealing from that judgment.

The Cumberland Construction Company, a partnership composed of D. H. Blair and three others, had arranged to purchase from Creech and other adjoining landowners certain land for the purpose of putting on a lot sale. This company proceeded to divide the land into lots and advertise the sale in the name of the Company and had spent considerable money in advertising the sale and sub-dividing the property. When the day advertised for sale arrived the Company was unable to pay Creech and the others for the land and in order that the sale might be consummated it was agreed that the sale would go on as advertised but that Creech and the other landowners would make the deeds. The terms of

sale as advertised were one-third cash and the balance in lien notes. It was announced at the sale that the sale would be made by the Company but that the land-owners would execute the deeds and the terms of sale were also announced although it does not appear that appellee heard this announcement. The Cumberland Construction Company employed the Norman Realty Company as auctioneers and sales agents and it appears that on the day of the sale D. H. Blair, in connection with members of the Norman Realty Company, was in a wagon or truck in active charge of making the sale. It further appears that Blair and persons connected with the Norman Realty Company were receiving cash payments and were taking notes for the deferred payments which were to be turned over to Creech and the other landowners. Appellee and other witnesses testify that it was also announced at the sale that if the purchasers desired to pay all cash a ten percent discount on the deferred payments would be given.

Appellee bid in two lots at $300 each and when he went to Blair and the others who were in charge of the sale he was informed that if he desired to pay all the purchase price he would be given a ten percent, or $40, discount on the $400 deferred payment. He elected to take advantage of this offer and, in addition to paying the $200 in cash, made out a check to the Cumberland Construction Company which was later cashed by Blair.

Appellee testified that no deed was made to him for the lots and that he was informed the deeds would be made later. Appellant Creech insists that a deed was made retaining a lien for $400 as the balance of unpaid purchase money and that when he talked to appellee about two months after the sale appellee said that he had a deed signed by Creech. His theory is that appellee pretends to have lost the deed because it retained a lien for unpaid purchase money. The testimony on this issue is very conflicting and such as to constrain us to accept the implied finding of the chancellor that no such deed was executed.

Appellant testified that no authority was given to the Cumberland Construction Company to collect any money from the sale of the lots but that the money was to be paid to him and the notes for deferred payments executed to him. Quoting verbatim from his testimony, he said:

"The sale would go on as advertised but instead of getting the deeds from the Cumberland Construction Company they would get them from the owners. * * * I was looking to The Norman Realty Company to put on the sale and pay me the money. * * * The sale was being put on practically the same except I was to make the deeds."

The testimony as a whole conduces to show that the persons in charge of the sale, namely, Blair and other persons not named but who were connected with the Norman Realty Company, did have complete charge of the sale and of collecting the cash payments and taking the notes. It may here be observed also that the Norman Realty Company was employed by the Cumberland Construction Company and not by Creech. In short, the Realty Company was acting as agent of the Cumberland Construction Company and not as Creech's agent and this agent, in connection with Blair, was undoubtedly accepting cash payments and taking notes for deferred payments. It also appears that Creech had some difficulty in getting a settlement from the Norman Realty Company and had to follow them into an adjoining county to compel an accounting.

The testimony appears to establish that appellant Creech did permit Blair, a member of the Cumberland Construction Company, in connection with agents employed by him, to receive payment of the cash and to take the notes. The fact that Creech contended that appellee owed only $400 on the purchase money was in itself a recognition of the authority of the Cumberland Construction Company, or its agent, the Norman Realty Company, to receive payment of the $200 cash payment made by appellee. In short, the fair inference to be drawn from the evidence is that Creech held out to the public that Blair, or the Cumberland Construction Company, was authorized to receive payment for the lots. From Creech's testimony it appears that the only limitation imposed, certainly the only one of which appellee had knowledge, or means of knowledge, was that the deeds were to be made by Creech.

Since the sale was advertised in the name of the Cumberland Construction Company and since that company, through Blair, was actually conducting the sale and handling everything in connection with it except the

actual execution of the deeds it appears to us that Creech held the Cumberland Construction Company out to the public as his agent for the purpose of making the sale and receiving payment of the purchase price; and that it was within the apparent scope of authority of the Cumberland Construction Company through Blair to receive payment in full for the lots. There is no doubt that others purchasing lots at the sale did, at least, pay to Blair and his agents helping him with the sale the down payments on the lots purchased. Since cash payments were being made to the Cumberland Construction Company it was within the apparent scope of authority of that Company to receive payment in full from all purchasers who desired to pay in full. If one dealing with an agent puts him in a position in which, according to the ordinary experience and habits of men, it is usual for him to have authority of a particular kind, anyone dealing with one in that position is justified in inferring that he possessed such authority unless the contrary is made known, Hurst Home Insurance Co. v. Ledford, 207 Ky. 212, 268 S. W. 1090; Union Central Life Ins. Co. v. Glasscock, 270 Ky. 750, 110 S. W. (2d) 681, 114 A. L. R. 373, and where payments are made on the purchase price of realty by the purchasers to an agent authorized to receive payments they are credits upon the purchase price regardless of the fact that the vendor did not know of them and regardless of what the agent did with the money since a third party dealing with an authorized agent is under no obligation to look to the application of payments by the agent. Young v. McCraw's Ex'x, 273 Ky. 581, 117 S. W. (2d) 577.

We are unable to escape the conclusion that the Cumberland Construction Company was held out to the public by Creech as his agent authorized to receive payments on the purchase price of the lots sold and that appellee under the circumstances was justified in paying to that company the full purchase price of the lots purchased by him.

Judgment affirmed.