## Tennessee Gas & Transmission Co. v. Cooke et al.

December 5, 1947.

Roscoe Conkling, Judge.

Davis, Boehl, Viser & Marcus and Doolan, Helm, Stites & Wood for appellant.

Woodward, Dawson, Hobson & Fulton and Henry D. Hopson for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Appellees, as plaintiffs below, instituted this action to recover from the Tennessee Gas and Transmission Company $3,500, the purchase price of a Cadillac automobile, alleged to have been sold to appellant on or about June 1, 1944. Appellant defended alleging this automobile was never purchased by it, nor sold or delivered to it, but that appellees made a sale of the automobile to Marshall F. Lerch, a former employee of appellant.

At the conclusion of all the testimony the trial court directed a verdict in favor of appellees. Promptly and within the required time appellant filed motion and grounds for new trial. This was followed by supplemental motion supported by affidavits for new trial on grounds of newly discovered evidence. This motion was overruled. The Tennessee Gas and Transmission Company is here insisting error in directing a verdict against it and in overruling its motion for a new trial, and is urging reversal of the judgment with directions upon the next trial to direct a verdict in its favor.

The chief problems center around, first, the fact as to whether or not Lerch had authority to purchase the Cadillac, and, second, as to whether or not the court erred in refusing to grant a new trial on grounds of newly discovered evidence.

Appellant insists that the evidence · undisputably shows Lerch had no actual authority, and if appellees recover it must be based upon Lerch's apparent authority. Appellant insists that it was incumbent upon appellees to show that they believed, and were justified in believing, that Lerch had authority to purchase the Cadillac.

This leads us then to the facts of the case. The testimony of 4 witnesses completed the evidence, three for appellees and one for appellant. It was established by appellees that late in the Fall of 1943 appellees had a long distance call from Marshall Lerch of the Tennessee Gas and Transmission Company, in which inquiry was made if the Cookes would sell some cars to the Tennessee Gas and Transmission Company which was constructing a pipeline from Texas to the East. The importance of such sale was impressed upon appellees in that the project was highly important dur-

ing the war time emergency. Investigation was made of the financial situation of appellant, and feeling it a patriotic duty to supply automobiles for such a project during the war time emergency, appellees arranged for sale and delivery of cars. The first lot sold consisted of 12 or 13 cars which the Cookes were to deliver to the Company in Houston, Texas, but difficulty over the gas coupons caused stoppage in the delivery of the cars at Memphis, Tennessee, at which place the cars were turned over to the Company. Appellant paid for this lot of cars. After this first delivery, Lerch bought cars and trucks, 47 in all, which were paid for by the Tennessee Gas and Transmission Company. In fact all the cars purchased by Lerch, except the Cadillac, were paid for. It was established also that generally the cars were delivered on the same day they were sold to Lerch and that purchase orders for the cars were not sent in by the Gas Company many times until long after delivery had been accepted. At the time of the particular purchase wherein the Cadillac was bought, the testimony was that Lerch came into Cooke's office and bought some 8 or 10 trucks and stated that he wished to purchase an additional two Cadillacs which the appellee company at that time had on hand. Before a deal for the purchase could be made, the Cookes sold one of the Cadillacs to someone else, but agreed to and did sell and deliver, the other one to Lerch, or through him to the appellant company. Lerch told appellees that he wanted the Cadillac for one of the officials of the appellant company and asked Cooke to leave the name blank on the Bill of Sale, stating that he was not certain whether he would want it licensed in the name of the Company or in the official's name, and that there was some doubt as to which official of the Company would be the one to use it. The car was billed to the Company and Cooke gave Lerch the invoice just as he had done on every one of the other cars sold. It was testified that this request by Lerch to leave the name blank was not unusual as they had handled some other transactions with him in the same way. The Bill of Sale, as introduced at the trial, was in the name of Marshall F. Lerch. One of the Mr. Cookes testified, however, that his office did not put Lerch's name on the Bill of Sale, nor did they know that he was

going to do this after he left with the car. After delay in payment for the Cadillac, Mr. Cooke called the office of the appellant company at Houston, and also went to the Company home office to see Mr. Miller, the Executive Vice President, who informed Cooke that Lerch was no longer with the Company, and intimated to Cooke that Lerch had pulled other deals similar to this. It appears that Miller advised Cooke that he should make an attempt to repossess the car, which Cooke refused to do.

Cooke admitted on cross-examination that all he knew about Lerch's connection with the Tennessee Gas and Transmission Company was what Lerch told him; that Lerch did not present any writing from any official of the Gas Company authorizing him to buy automobiles, nor did any one connected with the Company ever tell him that Lerch was authorized to buy a car. Cooke testified that at least half a dozen invoices for the Cadillac were mailed, but in accordance with Lerch's request he always addressed them to the Company to the attention of Mr. Lerch as had been the custom in all other invoices.

Mr. W. E. Miller, Executive Vice President, was the only witness who testified for appellant. He stated that the purchase of automobiles came under his jurisdiction and also Mr. Lerch's employment as expediter. He stated that Lerch's title was that of Chief Expediter, and his duties were to locate materials and equipment and see to its delivery to the Company, but that he had no authority to make contracts or actually buy materials; that when Lerch would locate some piece of desirable equipment his duty was to call Miller on the telephone and obtain a yes or no answer as to whether he should buy it. Thereupon, a requisition would be made to the Company's Purchasing Department, after which a purchase order would issue. He testified that for every one of the 47 cars and trucks purchased from Cooke Chevrolet Company, a purchase order was sent out and that these purchase orders went out before payment was made for the cars. He filed then a complete list of the 47 units which his Company had purchased from the Cookes. When attention was called to the Company about the Cadillac, it was stated

they had made no purchase order for the Cadillac and that he had no idea what Lerch did with the Cadillac, but upon checking he found that Lerch had the Cadillac registered in his own name in Paris County, Texas. Mr. Miller admitted he had never written or told Mr. Cooke that there were any limits on Lerch's authority until after appellant had refused to pay for the Cadillac. Upon the above facts substantially, the court directed the verdict as above stated.

For convenience, we will consider first the matter of authority, and secondly, the question of the motion for a new trial based on newly discovered evidence.

Appellant insists that since Lerch had no actual authority any recovery by appellees must, therefore, be based upon his apparent authority. And, bearing upon the matter of authority, appellant insists consideration should be given to the situation of the parties at the time of the sale of the Cadillac; the details of the sale; appellees conduct subsequent to the sale; and lastly, the question of which party made the loss possible. A long line of cases is cited by appellant in support of its contention relative to all of these matters. On the other hand, appellees cite a long line of cases in support of their contention as against the contention of appellant, and in supplemental brief each of the parties litigant undertakes to distinguish the cases cited by the other. We have carefully considered each of these cases as presented pro and con by both appellant and appellees, and will not undertake in this opinion to discuss them one by one. It is entirely unnecessary here to say anything more than that the rules as established in the cited cases are correct with reference to the particular set of facts contained therein. We will look, therefore, at the set of facts we have here, keeping in mind the cited authorities by both appellant and appellees, and thus determine the applicable and governing rule.

It cannot be justifiably said that the appellees created the situation that made the loss possible. Appellant's agent and Chief Expediter, Mr. Lerch, by long distance call, made the initial contact, and through a period of time purchased cars and trucks from appellees as agent of the appellant company, all of which

were paid for except the Cadillac in question. According to the undisputed testimony of appellees, there were no extraordinarily different circumstances surrounding the purchase of this particular car from that of the other cars purchased. Nothing in this record would indicate other than that the same authority, apparent or actual, was exercised in the purchase of the Cadillac as was exercised in the purchase of the other cars. The appellant company knew that Lerch was dealing with the Cooke Company, and if there was a limited authority, and more especially is this so if it were true that Lerch had pulled some similar deals, it was incumbent upon appellant company to notify Cooke of this limited authority. The general rule, applicable to the undisputed facts above, is laid down in May et al. v. Ken-Rad Corporation, Inc., 279 Ky. 601, 131 S. W. 2d 490, 492, as follows: ''A principal is bound by the contract of his agent within the scope of the latter's apparent authority although not authorized in expressed terms. Columbia Land & Mining Co. v. Tinsley, 60 S. W. 10, 22 Ky. Law Rep. 1082; White Plains Coal Co. v. Teague, 163 Ky. 110, 173 S. W. 360. It has been held that a principal is bound by the acts of the agent within the apparent scope of authority although the authority may be in fact limited, if one dealing with the agent is ignorant of limitations upon his authority. Hurst Home Insurance Co. v. Ledford, 207 Ky. 212, 268 S. W. 1090. In the latter case it is further held that where one of two parties must suffer loss through acts of an agent the loss should fall upon the one who authorized the agent to act rather than the innocent third party unlest the agent is acting beyond the scope of his apparent authority.'' See also National Deposit Bank of Owensboro v. Ohio Oil Co. and Ohio Oil Co. v. National Deposit Bank of Owensboro, 250 Ky. 288, 62 S. W. 2d 1048, and Herfurth et al. v. Horine, 266 Ky. 19, 98 S. W. 2d 21.

The matter of issuing the Bill of Sale in blank cannot be heard here as a reason for denying liability, but can only be considered as bearing upon the question of authority. Appellees stated that some of the other cars which had been delivered to, accepted by, and paid for by appellant, had been issued in blank at the request of Expediter Lerch. In the absence of

the allegedly newly discovered evidence, there is nothing in this record, up to the time the verdict was directed, to indicate that Lerch was not acting within his apparent authority, and as far as Cooke was concerned, within his actual authority.

The rule governing authority of an agent is succinctly and well stated in Union Central Life Insurance Co. v. Glasscock, 270 Ky. 750, 110 S. W. 2d 681, 685, 114 A. L. R. 373, in the following words:

"The general rule as to the scope of authority of an agent is well stated in Restatement of the Law of Agency, sec. 49, comment a, as follows: 'Authority exists in accordance with the manifestations of the principal to the agent; apparent authority may be created in any of the ways by which authority is created * * *'; i. e., 'by written or spoken words or any other conduct of the principal, which reasonably interpreted causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.' Section 27, p. 76.

"In comment b to section 49 it is said:

" 'Acts are interpreted in the light of ordinary human experience. If the principal puts one into, or knowingly permits him to occupy, a position in which, according to the ordinary experience and habits of mankind, it is usual for the occupant to have authority of a particular kind, anyone having occasion to deal with one in that position is justified in inferring that the person in question possesses such authority, unless the contrary is then made known.' See, also, 2 C. J. 661; Hurst Home Insurance Co. v. Ledford, 207 Ky. 212, 268 S. W. 1090; Russell & Co. v. Newdigate, 44 S. W. 973, 19 Ky. Law Rep. 1965." See also Hauck et ux. v. Lillick et ux., 254 Ky. 6, 70 S. W. 2d 958 and Creech et al. v. Disney, 286 Ky. 443, 151 S. W. 2d 76.

Therefore, the rules as laid down in the cases cited by appellant are not applicable to the set of facts herein. We think the court properly directed the verdict in favor of appellees.

This leads us then to the question of the motion for a new trial on the ground of newly discovered evidence. Particularly significant is Paragraph 5 of the

answer of the defendant wherein it is alleged "that if said automobile was sold by plaintiffs at or about the time alleged in the petition, or at any time, it was sold to Marshall F. Lerch and not to defendant, and that said Lerch bought the same in his own name and for his personal use and not in the name or for the use of defendant; and that defendant had no connection whatever with said transaction." It is impossible to escape the fact that at the time the above allegation was made the defendant below knew that its agent, Lerch, possessed detailed knowledge of all material facts involved. True, it may not have known the facts in entirety as shown by affidavit afterwards procured, but at least it knew that whatever knowledge Lerch possessed was important at the trial. There appears to be no uncertainty as to the existence of Lerch, or that the facts he possessed were other than alleged above. Under the circumstances here the evidence sought for introduction at a new trial cannot be classified as newly discovered evidence. When the case was called for trial defendant made no motion for continuance because of the absence of this material witness. Having, then, elected to proceed to trial without him, appellant cannot now be heard to request a new trial in order that testimony may be heard concerning a matter the material facts of which are known by that witness, and especially is this true since appellant knew he had knowledge of those facts. Benge's Adm'r v. Marcum, 194 Ky. 121, 238 S. W. 174; Reo Bus Lines Co. v. Dickey, 219 Ky. 307, 292 S. W. 791; and Penn Mutual Life Ins. Co. v. Roberts, 207 Ky. 524, 269 S. W. 736.

In Vaughn v. Taylor, 288 Ky. 558, 156 S. W. 2d 836, 839, we said: "Appellants knew of Waits although they did not know his identity, yet no motion was made for a continuance. They cannot take the chance of a trial without him and then when the result is adverse seek another trial because his testimony is now available."

We, therefore, cannot agree with this contention of appellant.

Wherefore, the judgment is affirmed.