CASE 10.—ACTION BY M. H. HALL AND OTHERS AGAINST JOHN W. WRIGHT AND OTHERS.—April 26, 1910.

## Hall, &c. v. Wright, &c.

Appeal from Letcher Circuit Court.

L. D. LEWIS, Circuit Judge.

Judgment for defendants, plaintiffs appeal.—Reversed.

1. Vendor and Purchaser—Bona Fide Purchasers—Record.— Where there is a mistake in the recording of a deed, it is the duty of the grantees to see that it is corrected; and, if they fail to do so, an innocent purchaser would not be permitted to suffer for their negligence.

2. Appeal and Error—Determination on Prior Appeal—Law of the Case.—A determination on a prior appeal that a grantee in a deed took a life estate, and that his children took the fee in remainder, constituted the law of the case.

3. Deeds—Construction—Estate Conveyed.—The omission of the words "and his children" after the name of a grantee in the caption of a deed, the habendum being to the grantee "and his children," did not affect the rights of the children in the land conveyed; the deed conveying a life estate to the grantee and remainder in fee to his children.

Hall, &c. v. Wright, &c.

4.  Deeds—Second Conveyance to Grantee—Original Deed—Vacation.—Where a deed from father to son, conveying 2,000 acres of land, executed in 1882, was not signed by the mother, and in 1885, the father executed a new deed, in which the mother joined, conveying to the son 1,500 acres of the same land, the second deed vacated and nullified the first deed, though the first was of record.

5.  Mortgages—Purchaser with Notice.—Where a mortgage recited that the land conveyed was the same conveyed to the mortgagor by deed of 1885, which had been executed to the mortgagor by his father, and which was inconsistent with a prior deed, including the same land, executed to the mortgagor by his father in 1882, the mortgagee was charged with notice that the first deed was nullified by the second, and took only such title as security as was conveyed by the second deed.

6.  Attorney and Client—Authority of Attorney—Compromise.—An attorney, employed to defend a case, has no authority to compromise it, unless authorized by his client.

7.  Compromise and Settlement—Authority.—Where, in a suit to quiet title against certain heirs, several of them were infants, and one was beyond the sea, a compromise made with one of the defendants, who employed counsel to represent his brothers and sisters and attempted, without authority, to act for them, was invalid.

8.  New Trial—Grounds—Fraud.—Where one of several heirs, made defendants in a suit to quiet title, compromised their claims without authority and in fraud of their rights, they were entitled to a new trial, as provided by Civ. Code Prac. section 518.

9   Judicial Sales—Rights of Purchaser—Payment of Liens.—Where a purchaser at an invalid judicial sale of property paid off an incumbrance adjudged to be a lien on the land in a suit between plaintiffs and their father, the purchaser was entitled to have the lien reinstated on the sale being set aside.

McQUOWN & BECKHAM, G. W. FLEENOR, GOURLEY, REDWINE & GOURLEY and J. H. HAZELRIGG for appellants.

HAGER & STEWART, D. D. FIELDS and DISHMAN & DISHMAN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE BARKER—Reversing.

In 1882 Eli Hall conveyed by deed to his son, Joseph Hall, a tract of land in Letcher county, Ky., containing in round numbers 2,000 acres. In this deed the wife of the vendor did not join. In 1885 Eli Hall and his wife conveyed to Joseph Hall and his chlidren in round numbers 1,500 acres of the same land that was embraced in the deed of 1882; it being claimed by appellants that the last deed was a substitute for the first, and made to carry into effect a contract by which the first was rescinded. In 1893 Joseph Hall purchased from the Aultman & Taylor Machinery Company a steam saw and grist mill for the sum of $1,671, giving two notes therefor—one for $400, due Sept. 1, 1893, and the other for $1,271, due September 1, 1894. To secure the payment of these two notes, Joseph Hall and his wife, Nancy, executed a mortgage on the mill which he had purchased from the Aultman & Taylor Company and on the land embraced in the deed from his father, executed and delivered in 1885. Afterwards Joseph Hall made default in the payment of the first note, and the Aultman & Taylor Machinery Company instituted an action in the Letcher circuit court, wherein it obtained a judgment by default and enforced its lien on the mill out fit, which it had theretofore sold him, and at the judicial sale had, it purchased the mill outfit for the amount of the first note, with interest and costs added, aggregating $430. Afterwards in the same action the company enforced its mortgage lien for the second note, and on Dcember 3, 1894, obtained a judgment for the sale of the entire fee in the tract of land mortgaged, and at the judicial sale had thereafter it purchased the land for the amount of the second note, with interest and costs. This sale was afterwards confirmed by the court, a deed made to

the purchaser, a writ of possession issued in its favor against Hall and wife, and under this process it was placed in possession of the land involved in this case. Hall and his family removed to Breathitt county, Ky., where they continued to reside until his death in the year 1902.

On October 17, 1900, the children of Joseph Hall, who are the appellants in this action, instituted an action in the Letcher circuit court against their father, in which they claimed that under the deed of 1885, made by their grandfather, Eli Hall, to their father, the latter took only a life estate in the land and that his children, after his death, became the owners of the remainder in fee simple; that, when the deed was recorded by the clerk of the Letcher county court, by fraud or mistake the words "and his children," following the name of Joseph Hall in the caption, which were in the original deed, were omitted; and they prayed that the deed as recorded be corrected, so as to show the facts in regard thereto. Although the Aultman & Taylor Machinery Company had long before enforced its mortgage lien upon the land against the father, Joseph Hall, and his wife, Nancy, and had purchased it at judicial sale and been put in possession of it by the court, it was not made a party to this action. A judgment by default was rendered in accordance with the prayer of the petition. Of course, no interest or right of the company was prejudiced by any proceedings had in this case. The attorneys for the children, Morgan & Wootton, were allowed a fee of $500 in the action, which was adjudged to be a lien upon the land.

On July 29, 1901, the Aultman & Taylor Machinery Company filed an action in the Letcher circuit court

against the children of Joseph Hall and against Morgan & Wootton, their attorneys, in which it was alleged that the claim of Morgan & Wootton to a lien upon the land to secure their fee of $500, and the claim of the children of Joseph Hall to be tenants in remainder after the death of their father, cast a cloud upon its title to the land, and it prayed a judgment quieting its title as against the defendants. Several of the children of Joseph Hall were infants, and one was absent from the United States doing duty as a soldier in the Phillipine Islands; but Eli Hall, the eldest, undertook to manage their common defense in this action, brought, as before said, to have their claim to be tenants in remainder after the death of their father adjudged to be without legal foundation. He employed counsel to represent him and his brothers and sisters in the action, and through them filed an answer for all the children, in which they claimed to be tenants in remainder after the death of their father. We do not deem it necessary to set out with particularity the issues that were made in this case, except to say that after they were completed Eli Hall and the plaintiff in the litigation compromised the case—it being agreed that a judgment should be allowed to go in favor of the Aultman & Taylor Machine Company, granting the prayer of its petition; that the Aultman & Taylor Machinery Company should then sell the property to appellant John W. Wright for $4 an acre; that with this money Wright should pay the debt of the Aultman & Taylor Machine Company, with interest and costs, amounting to $2,650, and that out of the remainder, amounting to $2,361.60, the sum $500 was to be paid to Morgan & Wootton for their services in the litigation between the children and the father to correct the mis-

take in the recording of the deed, and the residuum paid over to Eli Hall for himself and his brothers and sisters. This was done.

Afterwards, in July, 1904, Joseph Hall, the father, being dead, the appellants, his children, instituted this action in the Letcher circuit court against the Aultman & Taylor Machinery Company and John W. Wright, claiming to be the owners in fee simple of the property involved herein and that they were rightfully entitled to the possession thereof, which was being wrongfully withheld from them, and also setting up the action of the Aultman & Taylor Machinery Company against them heretofore set forth, and alleging that the agreed judgment entered therein was a fraud upon their rights, and was done without their knowledge or consent, and praying that the judgment be set aside and held for naught, and that they be adjudged to be the owners and entitled to possession of the land in question. As an exhibit with their petition they filed the deed from Eli Hall and wife to Joseph Hall and his children. To this petition a general demurrer was filed, and the circuit court, being of opinion that the deed showed on its face that the fee-simple title of the property described therein was conveyed to Joseph Hall, and that his children took no interest thereunder, sustained the demurrer; and, the appellants (plaintiffs) declining to plead further, the petition was dismissed, and an appeal prosecuted to this court, where the judgment of the circuit court was reversed, we holding (Hall v. Wright, 121 Ky. 16, 87 S. W. 1129, 27 Ky. Law Rep. 1185) that under the deed in question Joseph Hall took a life estate, with remainder to his children in fee simple.

After the case returned to the circuit court an answer was filed by the defendant, which among other things, claimed that the copy of the deed from Eli Hall and Polly Hall, his wife, to Joseph Hall and his children, filed as an exhibit with the petition, was not a true copy ·of the deed as recorded in the county clerk's office; that in the deed as recorded the words "and his children," following the words "Joseph Hall" in the caption of the deed filed by the plaintiffs, do not appear, and alleging that under the deed as recorded Joseph Hall took the fee simple title to the land. The defendants (appellees) also claimed that under the deed of 1882 Joseph Hall took the fee-simple title, if not under the deed of 1885. By reply the plaintiffs alleged that the deed of 1882 had been rescinded by agreement between the father and son, and the deed of 1885 was made to carry into effect this rescission, and was substituted by the parties in interest for the deed of 1882. After the evidence was all in and the case submitted to the chancellor, he adjudged that the land belonged to Joseph Hall in fee simple, and that his children took no interest under the deed of 1885, and dismissed the petition. From this judgment this appeal is prosecuted.

We do not find it necessary to enter into the question as to whether or not the words "and his children" were interlined in the deed of 1885, as claimed by the appellee, after the deed was recorded. For the purposes of this case we will assume that the words "and his children" did not follow the name of Joseph Hall, as grantee, in the caption.

The question then recurs: What interest, if any, had the children in the deed recorded? When the case was before us on the former appeal, it was urged by the appellee that although the words "and his

children'' followed the name of the vendee, Joseph Hall, in the caption and also followed it in the habendum, inasmuch as they were omitted in the granting clause, the conveyance of the title was to Joseph Hall alone, and the words ''and his children'' were words of inheritance synonymous with ''heirs.'' This question was discussed at great length in the opinion on the first appeal, and all of the cases in this state bearing upon the question were cited and discussed, and we there held that the children took the fee-simple title in remainder after the death of their father. It is not necessary to discuss this phase of the case any further than to say that whatever was decided on the first appeal is the law of the case now.

But it is insisted that the deed as actually recorded is different from that discussed on the former appeal; this difference, as said before, being the omission of the words ''and his children'' after the name of Joseph Hall in the caption, the habendum remaining precisely the same and being to ''Joseph Hall and his children.'' The question then arises: Does the omission of the words ''and his children'' after the name of Joseph Hall in the caption change the title of appellants, as held on the former appeal? We think not. The very question we are now discussing arose in the case of Baskett v. Sellars, 93 Ky. 2, 19 S. W. 9, 13 Ky. Law Rep. 909. There the grant by the vendor was to his daughter, A. H. B. Farley, and to his son, T. L. Farley, parties of the second part, and the habendum was: ''To have and to hold to them, my said daughter and son, and their children forever,'' etc. It was held that the son and daughter took only a life estate, and their children took the fee simple in remainder. We have examined the deed as it appears in the record in the case cited, and it

is identical with that under discussion; that is, the words "and their children" do not appear after the names of the vendees in either the caption or the granting clause, but do follow the names in the habendum. This case is conclusive of the question, and we therefore adhere to our former opinion in Hall v. Wright, supra. See, also, Bodine's Adm'rs v. Arthur, 91 Ky. 53, 14 S. W. 904, 12 Ky. Law Rep. 650, 34 Am. St. Rep. 162.

The next question is whether or not the rescission of the deed of 1882 and the substitution of the deed of 1885, set up by the appellants, is valid. Undoubtedly by the deed of 1882 Eli Hall, the father, conveyed to his son, Joseph Hall, in fee simple, a boundary containing 2,000 acres, which embraced the land involved in this litigation and more. The real consideration of this deed was the agreement on the part of Joseph Hall to support his father and mother during their natural lives; and it is indisputably shown in the record that, after Joseph married, his mother and wife did not agree, and that the elder lady disliked the daughter-in-law. The mother refused to join in the deed of 1882, because she did not wish the daughter-in-law to have any interest in the land, and she was also of the opinion that Joseph Hall, by virtue of the deed of 1882, was getting more than his share of his father's estate. For these reasons she declined to join in the deed, and therefore Joseph took the land conveyed to him by the deed of 1882 subject to his mother's contingent right of dower. We think the evidence shows beyond successful contradiction that the father and son by mutual agreement rescinded the deed of 1882, and that in lieu thereof the son accepted the deed of 1885 conveying to him a smaller boundary of land by 500 acres, but free from

his mother's contingent right of dower. Undoubtedly, as between the father and son, this could be done.

The question remains, however, whether or not, with the deed of 1882 on record, a stranger dealing with the son would be affected by the terms of the subsequent deed when recorded. In the instant case it is clear that the Aultman & Taylor Machinery Company had actual knowledge of the substitution; for, in the mortgage to it, it is recited that the land conveyed is the same land conveyed to Joseph Hall by the deed of 1885. The two deeds are inconsistent. By the first the son takes 2,000 acres of land, subject to his mother's right of dower. By the second, he takes 1,500 acres of the same land, free from his mother's right of dower. But in the latter deed he received only a life estate, with remainder to his children. The rule is well settled that, where a vendee takes a second deed, inconsistent with the first, the second vacates and nullifies the first. In Am. & Eng. Ency. of Law (1st Ed.) vol. 3, p. 891, it is said: "If a new agreement be made which is inconsistent with the former agreement, so that they cannot subsist together, the old one is impliedly discharged by the new one." To the same effect is Rhoades v. Chesapeake & Ohio Ry. Co., 49 W. Va. 494, 39 S. E. 209, 55 L. R. A. 170, 87 Am. St. Rep. 826; Redding v. Vogt, 140 N. C. 562, 53 S. E. 337, 6 Am. & Eng. Ann. Cas. 312. In Warville on Vendors, vol. 2, p. 970, it is said: "One of the most common forms of rescission by mutual agreement consists of what is termed novation; that is, the entering into a new contract which takes the place of the original one, and in which it is merged and extinguished. If the new contract in express terms rescinds the old one, no question can arise; yet the same result follows, as a necessary im-

plication, and takes place by operation of law, without any express agreement to that effect whenever the new contract is manifestly in place of or inconsistent with a former one, or which renders a former contract impossible of performance.'' As said before, the Aultman & Taylor Machinery Company had actual notice of the substitution, and, therefore, cannot claim to be innocent purchasers without notice. This being true, it is as much bound by the rescission or novation which took place between Eli Hall and his son, Joseph, when the deed of 1885 was executed and delivered as was the vendee, Joseph Hall.

The only remaining question is the effect of the agreed judgment carrying into effect the compromise made by the brother of appellants, Eli Hall, in the suit of Aultman & Taylor Machinery Company against appellants. It is shown indisputably that Eli Hall was without any sort of authority from his brothers and sisters to compromise the case. That he did so on his own responsibility and in fraud of the rights of his brothers and sisters is practically admitted, or, at least, not denied. The rule is well settled that an attorney employed to defend a case has no authority to compromise it, unless specially authorized by his client. Harrow et al. v. Farrow's Heirs, 7 B. Mon. 126, 45 Am. Dec. 60; Givens v. Briscoe, 3 J. J. Marsh. 529; Harrodsburg Sav. Inst. v. Chinn, 7 Bush, 539; Brown v. Bunger, 43 S. W. 714, 19 Ky. Law Rep. 1527; Cox v. Adelsdorf, 51 S. W. 616, 21 Ky. Law Rep. 421; Benedict v. Wilhoite, 80 S. W. 1155, 26 Ky. Law Rep. 178. Eli Hall had no greater authority than if he had been a regular attorney, and, therefore, he had no authority to act for them in compromising the action. This being true, the

judgment which is sought to be vacated in this action was a fraud upon the rights of the appellants, and brings the case directly within the purview of section 518 of the Civil Code of Practice, which authorizes in such cases the granting of a new trial.

It follows, from what we have said, that the judgment must be reversed, and, as all of the questions respecting the title to the property in question have been fully considered and determined by us, there will remain nothing to be done when the case returns to the trial court but to enter judgment for the appellants. Inasmuch as John W. Wright paid off the attorney's fee of Morgan & Wootton, which was adjudged to be a lien upon the land in the suit between appellants and their father, he should have credit for what he actually paid; or, in other words, the appellants should be required to repay him this sum, and he should be adjudged a lien to secure the payment.

Judgment reversed for proceedings consistent with this opinion.