## Combs, et al. v. Allen, et al.

(Decided April 24, 1925.)

Appeal from Fayette Circuit Court.

1.  Evidence—Judicial Notice of Circuit Court Rules Certified to Court of Appeals.—Court of Appeals takes judicial notice, under statute, of circuit court rules certified to it.

2.  Receivers—Creditors Filing and Proving Claims, in Action for Appointment of Receiver, Become Parties Thereto.—Creditors filing and proving their claims, in action for appointment of receiver, become parties thereto, under Civil Code of Practice, section 432.

3.  Judgment—Litigant having Complete Remedy by Appeal Cannot Sue to Set Aside Judgment for Errors Apparent on Face of Record. —Litigant having complete remedy by appeal cannot sue, under Civil Code of Practice, section 518, to set aside judgment for errors apparent on face of record.

J. A. EDGE for appellants.

GEORGE C. WEBB and DAVID C. HUNTER for appellees.

Opinion of the Court by Judge Dietzman—Affirming.

In 1906, James C. Rogers was appointed by the Fayette circuit court receiver of the American Reserve Bond Company, formerly the Southern Mutual Investment Company, in an action brought for that purpose by Elizabeth Saville. He continued to act as such until he was finally discharged and the case closed in 1917. During these years he was represented by the appellees, John R. Allen, Henry T. Duncan, Thomas T. Forman, M. D. Forman, and also by Judge Homer Batson, Benjamin F. Washer and A. M. Baker as counsel. The affairs of the investment company were in a most complicated condition, and at the time of the appointment of Rogers as receiver it had practically no assets on hand and outstanding claims that ran almost to $2,000,000.00, with creditors all over the United States and in some foreign countries. It would serve no good purpose to detail here the immense amount of labor performed by the receiver and his counsel. It is sufficient to say that they had to contend with hostile receivers appointed in many other states, that they had to conduct a tremendous amount of litigation in the state and federal courts of these other states in order to vindicate the rights of this Kentucky Investment Company; that they had a great deal of litigation against prior stockholders and directors of the investment company to make them account for their negligence in the handling of the affairs of the company; that they performed an endless amount of detail work in auditing the claims presented against the company; that as a result of their labors the investment company's receiver gathered together almost $600,000.00 of assets, and that after paying the preferred claims in full, the costs of all litigation in the various states and the attorneys' fees hereinafter mentioned, the unsecured creditors received dividends amounting in the aggregate to 25% of their claims. In 1912, the receiver and his counsel made an application to the circuit court for an allowance for their services. They asked for a lump sum allowance not only for services theretofore performed but also yet to be performed. In support of this application, they filed a number of affidavits of a great many of the leading lawyers of the state, not only of those residing in Fayette county but also of those residing in various other sections of the state. The majority of

these attorneys fixed the fee that should be allowed from $120,000.00 to $140,000.00. The lowest fee fixed by any one was by the Hon. John Shelby, and he fixed it at $100,-000.00. Some of the lawyers indicated that in their judgment the receiver and his counsel should get a fee of 20% of the assets realized upon. In fixing these fees, the attorneys took into consideration, not only the immense amount of labor that had been performed and the valuable results to the estate, but also the fact that if these results had not been' favorable, the distinguished counsel and the receiver would have received nothing for their pains. No objection was made to the allowance asked for nor was there any contrary proof offered to that produced by the receiver and his counsel. After a consideration of the matter, the court entered this order:

"It is ordered and adjudged that the receiver, James C. Rogers, be and he is at this time allowed the sum of $25,000.00 on account of his personal services, and for his attorneys of record herein, H. W. Batson, Benjamin F. Washer, Allen & Duncan, A. M. Baker, and Forman & Forman, he is allowed at this time the further sum of $50,000.00, each and both of said allowances being on account."

After setting out some other matters not here pertinent, the order closed thus:

"This cause and application for allowances are reserved by the court for such additional action as the court may hereafter adjudge."

In 1915, the receiver filed a report and petition for advice in which he stated that he had enough funds on hand to pay a dividend of 4% to the unsecured creditors, and as the funds on hand after the payment of this dividend would only be sufficient to pay the costs and expenses of the receivership, this dividend would be a final dividend. The court ordered the dividend paid and that the creditors be notified that it was a final dividend, and then reserved the case for further consideration of costs and fees. The receiver thereupon sent out to all the unsecured creditors checks for their dividends and a letter informing them that this was a final dividend.

In January, 1916, the accounts of the receiver were referred to the master commissioner of the court for final settlement. The commissioner filed his report on

July 7, 1917, which report, no exceptions having been filed thereto, was confirmed by the court on November 17, 1917.

On November 14, 1917, the receiver reported to the court that he had on hand accounts due the company and also two judgments in the sum of $19,660 each, all of which were worthless, but for which he had a bid of $210, and he prayed the advice of the court as to their sale. He did not disclose the name of the bidder, but it was the appellee Duncan who made this offer in order to get the estate closed up, and with no idea that there would ever be a cent realized upon the accounts or judgments but with the intention of just considering this sum so much lost out of his fee. It may be said in passing that as a matter of fact these judgments and accounts are not shown to be worth anything and nothing was ever collected on them except the sum of $400 on one of the judgments, which the judgment debtor paid in compromise to get rid of such an outstanding claim, and to the extent of $190 Mr. Duncan and his associates did make a profit. That this was an unexpected windfall is beyond question of a doubt. The court on November 17, 1917, ordered the receiver to sell the accounts and judgments in accordance with his petition for advice, and on November 24, 1917, entered a final order in the Saville case reciting that after the payment of all court costs and other expenses therein noted, there was left on hand the sum of $37,-626.93, which was allowed and ordered paid to receiver and his counsel as a final allowance for their services; the receiver to get one-half of this amount and the counsel jointly the other half. No notice, either actual or constructive, of the filing of any of the reports, petitions for advice, motions or orders made or filed subsequent to 1915 set out herein was given to the creditors of the Investment Company who had proved their claims, except the letter of the receiver informing them of the final dividend. The rules of the Fayette circuit court, which have been certified to this court and therefore under the statute are taken judicial notice of by us, provide for a constructive notice by placing motions on a docket known as the "motion docket," but none of the orders, proceedings or motions in question were ever placed on such docket. On November 22, 1918, the appellants herein who were creditors of the Investment Company and who had filed and proved their claims in the old Saville action, thereby becoming parties thereto—Heidrich v. Silva, 89 Ky. 422,

12 S. W. 770; Civil Code 432—brought a suit against the receiver and all of his counsel except Baker, seeking to have set aside all of the orders made in the Saville case bearing on the granting to the receiver and his counsel the allowance of $37,626.93, and the assigning to Mr. Duncan the outstanding accounts and judgments. The appellants proceeded on the theory that these motions, orders and proceedings were void and procured by fraud because no notice, actual or constructive, had been given the creditors of the Investment Company of said motions, orders and allowances. This action was later dismissed without prejudice and the present action, identical in all respects to the first action except there are omitted as defendants the estate of the receiver who had in the meantime died, and also Messrs. Batson and Washer, was brought on August 6, 1920. A reading of the petition leaves the mind somewhat in doubt as to just its nature, but counsel for appellants, in his reply brief, states that it is intended to be an action under section 518 of the Code, to set aside a judgment because procured by fraud. As the petition is susceptible of that interpretation we will accept counsel's position on that point. There are filed with the petition in this case certified copies of all of the proceedings now objected to from 1915 on in connection with the allowances and assignments sought herein to be set aside. Appellants introduced no proof other than these certified copies, and they insist that on these copies alone and the showing made by them they are entitled to the relief they ask. From this statement it is apparent that at the worst the orders and judgment in the Saville case complained of were erroneous and not void. It is further apparent that every fact and error on which appellants rely for relief appeared on the face of the record in the old Saville case, and it is further apparent that all this was known to appellants at least as early as November 22, 1918, when they brought their first suit, and at which time they had a full and complete remedy by appeal from the orders and judgment in the Saville action. The question then presents itself whether or not a litigant may, when he has a complete remedy by appeal, prosecute an action under section 518 of the Code, to set aside an erroneous judgment. That he may not seems clear to us on reason and on authority. In the case of Coffey v. Procter Coal Co., 14 Ky. L. Rep. 415, 20 S. W. 286, this court held that an unsuccessful litigant cannot after

the expiration of the term at which judgment was rendered in the action seek a new trial on the ground of errors in the proceedings which do not render the judgment void, and which could have been corrected on appeal. In Lovelace v. Lovell, 107 Ky. 676, 55 S. W. 549, this court said:

> "If judgments can be vacated or modified simply because they are erroneous, then in every case when it was claimed the judgment is erroneous, instead of an appeal a party could file his petition for a vacation or modification of the judgment. This course of proceeding is not authorized by the Civil Code of Practice."

To the same effect are Reynolds v. Rowland, 12 Ky. L. Rep. 189; and Naylor v. Brown, 160 Ky. 617, 169 S. W. 983. As every error relied upon by the appellants herein appeared on the face of the record in the old Saville case, and as the appellants had ample remedy by appeal they are without authority to bring this action under section 518 of the Code, and hence the judgment of the lower court in dismissing their petition was correct, and the judgment is affirmed.

Judgment affirmed.