# Combs' Administrator v. Virginia Iron, Coal & Coke Company.

(Decided November 25, 1930.)

S. M. WARD for appellant.

JESSE MORGAN for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Affirming.

The appeal involves the right of the appellant to recover of a judgment creditor money shown to have been paid debtor's attorney, and with which, it appears, he absconded.

In 1918 the Virginia Iron, Coal & Coke Company sued Jesse Combs and his wife, Rachel Combs, for specific performance of a contract to convey certain mineral rights. On April 9, 1923, a decree directing such performance was entered with a judgment over against the plaintiff for the balance of the recited consideration, $913.91. In that suit Combs had employed J. M. Dixon as his attorney on a contingent fee equal to one-half the sum recovered for or saved him, and he employed the firm of Faulkner & Stanfill to assist him. After the court had rendered his decision, but apparently before the judgment was entered on the order book, Dixon went to the agent of the Virginia Company, who was then in ignorance of developments, and stated his clients would settle by accepting the consideration provided the company would pay court costs. This was agreed to. He obtained from the agent a deed which had been prepared and later returned with it, signed by Combs and his wife, each by mark, and acknowledged before Dixon as a deputy county court clerk. The attorney produced his contract of employment, and also a paper dated April 4, 1923, purporting to have been signed by his clients by their mark and by Elihu Wells, father of Mrs. Combs, as witness, requesting that check be given to Dixon. Dixon obtained the signature of Mr. Stanfill to a receipt for the money, and, upon surrender of these papers, the agent of the company gave Dixon a draft payable to Combs and his wife. This draft was cashed by Dixon, who indorsed the names of his clients by himself as attorney. It appears that a few days thereafter Dixon departed for parts unknown. He paid no part of it to his co-counsel.

The judgment entered on April 9, 1923, was never released or satisfied of record. Jesse Combs died about two years afterward, and no execution was issued or other attempt made to collect the judgment for the consideration until six years afterward. On April 8, 1929, the administrator of Jesse Combs, and the widow, Rachel, had an execution issued. The Virginia Company

filed verified motion to quash it, which set forth facts showing there had been a satisfaction of the judgment. Demurrer to the motion was overruled, and answer filed denying its material averments, including the execution of the deed and the payment of the money, and pleading affirmatively that the judgment had never been satisfied in whole or in part, and that the purported deed and order to pay the money to Dixon were forgeries.

In addition to evidence above recited, Mrs. Combs testified, without exceptions being properly taken, that she had received no part of the money, and that her husband had told her that Dixon had not paid him; that she had not signed by mark or acknowledged the deed produced or the order on the company to pay the money to Dixon; that at the time of these transactions she was separated from her husband and was at her father's home; that she had employed Dixon to bring a divorce suit, and he had come to see her there and produced some papers which he said pertained to the divorce, and she signed them by her mark, her father also touching the pen When she testified in this case, her father had been dead about a year. She and her husband heard that Dixon had gotten their money and absconded, and he came to town to see about it. Mrs. Combs had also appeared before the grand jury, and an indictment was returned against Dixon because of this transaction. ·James Sumner lived about 250 yards from Combs, and testified very positively that on April 4, 1923, no one had gone to Combs' house, where he had been all that day. Although six years had expired, this witness with a remarkable memory detailed very minutely the movements of Combs and himself that day and for several days before and afterward. In contradiction of Mrs. Combs' testimony, it is shown that no divorce proceeding was ever instituted for her, and that she and her husband continued to live together until his death. It is also shown that the agent of the company saw Combs several times after Dixon had gone away and seemingly after Combs had learned of the payment, and Combs said nothing to him about the matter.

The lower court sustained the motion and quashed the execution. The appellants ask a reversal of that order on the ground that it is contrary to the law and facts.

We think the proof conclusive that the company paid the money to Dixon and was authorized to do so.

The contract of employment of Dixon is not questioned. It was a general authority to defend the suit, and the agreement that his compensation depended on the amount recovered through his services impliedly authorized him to collect any sum adjudged by the court. In a number of cases this court, following the almost universal rule, has held that an attorney may not without express or special authority compromise a claim and settle it for less than the full amount claimed. Smith v. Dixon, 60 Ky. (3 Metc.) 438; D. C. Heath & Company v. Commonwealth, 129 Ky. 835, 113 S. W. 69; Hall v. Wright, 137 Ky. 39, 127 S. W. 516; Id., 138 Ky. 71, 127 S. W. 516, Ann. Cas. 1912A, 1255. But the amount collected by the attorney in this instance was not less than that sought; it was the entire sum plus court costs, which were properly payable by his client.

Moreover, it is generally held that an unauthorized compromise by an attorney may be ratified by the client, and such ratification may be implied from negligence or inattention or apparent acquiescence therein. It is the client's duty, having knowledge of the settlement, to express his disapproval within a reasonable time. 2 R. C. L. 998; Loughridge v. Burkhart, 147 Ky. 457, 144 S. W. 65. This is under the equitable doctrine of laches. Klineline v. Head, 205 Ky. 644, 266 S. W. 370. The client in this instance is shown to have had knowledge of this settlement, and for six years he and his privy made no disclosure or effort to show that he had not been paid.

The foregoing commentary meets the complaint of appellant that the company is yet responsible for the payment because at the time Dixon collected the money there was in fact no judgment, as it was not entered until four or five days thereafter.

In the circumstances disclosed, it would seem the same rule should apply as where the judgment had been entered and signed by the court. The law in such a state of case is thus given in 2 R. C. L. 1005: "It is generally conceded that where an attorney has recovered a judgment for his client he has authority, by virtue of his employment as attorney, to receive payment, and enter satisfaction of the same."

When so received, the payment is as effective in discharging the claim as if made to the client. Hopkins v. Ketterer, 237 Pa. 285, 85 A. 421, Ann. Cas. 1914B, 558. See also Morris v. Standard Oil Company, 192 Cal. 343, 219 P. 998, 30 A. L. R. 1103.

Upon either theory the special request on the company to give the check to the attorney becomes immaterial whether it was a forgery or not. The deed produced and delivered was prima facie properly executed. Verity is to be accorded the certificate of acknowledgment under section 3760, of the Statutes, and the many cases construing it. Of pertinent application is Duff v. Virginia I.; C. & C. Co., 136 Ky. 281, 124 S. W. 309.

If Combs did not in fact receive the money paid by the appellee in satisfaction of the judgment against it— and we have only the statement of his wife that he did not—it was his misfortune, and not that of the company who, under the circumstances, was authorized to pay it to his attorney.

The judgment is therefore affirmed.