## Fillhardt v. Schmidt et al.
## Rardin's Adm'x v. Same.

Sept. 29, 1942.

Benton & Benton for appellant.

Lester & Riedinger and John William Heuver for appellee.

. OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The joint appeals are from judgments dismissing petitions for new trials, brought under Section 518, subsection 4, of the Civil Code of Practice, upon the ground of fraud practiced by the successful party in obtaining judgments dismissing as settled two actions for damages. The new suits and the appeals are against the defendants in the tort actions and their attorneys; also against plaintiff's attorneys of record in those cases. The questions are whether an order overruling a motion to set aside an original judgment from which no appeal was taken is a bar to the maintenance of a suit for a new trial under Section 518 of the Code, and, if not, whether the

plaintiffs proved their cases. The court had sustained demurrers to the pleas in bar but when the cases were submitted on the evidence the court (a different judge presiding) set aside the former orders and ruled that the orders on the motions to vacate the original judgments were res adjudicata of these proceedings. The court also ruled that the plaintiffs had not proved fraud in obtaining the judgments.

The essential record may be summarized as follows: An alleged roadhouse gambling establishment in Campbell County was destroyed by an explosion and fire of incendiary origin on the night of February 3, 1936. Carl Fillhardt was living in the building as a caretaker and an infant, Mary Lou Rardin, was in his home. The child died from burns and injuries. One man pleaded guilty to murder and two others were convicted, all being sentenced to life imprisonment. Whitfield v. Commonwealth, 265 Ky. 640, 97 S. W. (2d) 565; second appeal, 278 Ky. 111, 128 S. W. (2d) 208. Fillhardt was seriously injured. Suits were filed against the owners of the establishment for damages for his injuries and the death of the child upon the ground that the owners had received threats, warning and notice of being burned out and had been negligent in not informing Fillhardt and the occupants of the building of the danger. The filing of the suits for damages was under these circumstances: The administrator of the child and Fillhardt had employed Daniel W. Davies as their attorney to bring the actions, but Mr. Davies was connected with the Whitfield prosecution and felt that he could not appear of record for the parties in the civil actions without embarrassment until that relationship had ceased. As the statute of limitations was about to bar the actions, it was purposed to procure a certain other lawyer to file them, but because of the cessation of business and general chaos in Newport on account of the great flood of 1937 he could not be presently found. Fillhardt, the administrator of the child, and Davies happened upon Charles E. Lester, an attorney, in the courthouse, on February 1st and got him to file the suits. Lester was given to understand that Davies would take charge of the cases when his connection with the Whitfield prosecution had ceased. Davies and Lester then prepared the petitions which were signed by Lester for himself and partner, Lawrence Riedinger, Jr., and then filed. No agreement or understanding was reached as to the attorneys' compensation for this

temporary service. Before filing the suits Lester inquired whether the parties would settle their claims for $7,-500. They were non-committal but told him that if any settlement should be made Mr. Davies must be consulted and that they wanted to know about it. Lester went to the telephone and on his return reported he had been talking to his partner and that Schmidt, one of the men against whom the claims were being made, was then in their office and that no settlement could be reached so it would be necessary to file the suits. Arrangements were made for the parties to be present at the taking of the deposition of some of the defendants, but that was not done. On the night of March 22nd Lester called them to his office and told them he had settled both cases for $2,500. Lester claimed a fee of one-half the amount he had recieved. Lester had a check of one of the defendants payable to the parties and to himself and Riedinger which he asked the parties to endorse, and had releases which he insisted they should sign. Neither of them nor Mr. Davies had been consulted and they disavowed the settlement and refused to endorse the check or execute the releases. Arthur J. Daly, attorney for the defendants, testified that he had delivered the check to Lester upon his assurance that the releases would be executed. Lester and Riedinger, for the plaintiffs, and Daly, for the defendants, signed an agreed order reciting that "all matters in dispute in the above styled cases have been fully and finally disposed of, the case is now dismissed at defendants cost." The order shows the filing stamp of the clerk of the court, of date March 22, 1937, scratched out. The clerk testified this was done because the Judge had not ordered it filed. It is significant that Fillhardt was called on to verify an amended petition the next day. Another significant thing is that J. W. Heuver, special attorney for one of the defendants, filed motions in the cases on March 24th, thus disclosing he was in the dark about the settlement. Daly testified he had nothing more to do with the case after signing the agreed order of dismissal and lodging it in the clerk's office on March 22nd. The check, payable to the parties and their attorneys jointly, was not honored by the bank. It is indicated by one of the defendants that this was because of insufficient funds, but there is no positive testimony to that effect. It is more likely that it was not paid because the parties as payees had not endorsed it. A day or so later the dishonored check was returned to the defend-

ants. One of them took cash to a bank for which he obtained a cashier's check for $2,500, payable to the circuit court clerk by name—not to the parties or their attorneys—which was given Lester. This was endorsed specially by the clerk's deputy and delivered back to Lester who endorsed his own and his partner's name upon it. The bank's officers, after talking with some of the defendants and with Daly about honoring the check because of the irregular endorsements by the deputy clerk, cashed it for Lester or Riedinger. They pocketed the money and still have it so far as the record discloses. The order of dismissal bears another stamp of filing by the circuit clerk on April 24, 1937. This second transaction was unknown to the plaintiffs and Mr. Davies. Several weeks later Fillhardt went to the clerk's office to check up on the cases and learned they had been dismissed settled. He and Davies went to the office of Lester and Riedinger and were told by the latter he knew nothing about the dismissal. Lester was not there. The record in the original cases shows that motions to set aside the orders of dismissal were lodged on May 5, 1937, and later filed. They were prepared by Davies on printed motion blanks provided by the court and were filed by Fillhardt personally. The grounds for vacation of the judgment were not stated, and there were no supporting affidavits, nor were the motions signed by anyone. It does not appear there was any hearing or trial or anything else done about the motions until the court overruled them in October.

These suits for new trials were later filed. The defendants traversed the allegations of the petitions, pleaded that Lester and Riedinger had had full authority to settle the cases; and, further, that the plaintiffs were estopped from maintining these suits by filing the motions to set aside the orders dismissing the actions, having elected to proceed in that manner. It is noted that the answers are signed by Lester and Riedinger as attorneys for the defendants and that they continue to represent them in opposition to their former clients whom they and others are charged with defrauding.

The general construction of Section 518 and accompanying provisions of the Code authorizing proceedings in the trial court to vacate or modify a judgment after the expiration of the term, as they have been related to a condition like the one at bar, is given in Commonwealth

ex rel. v. Weissinger, Judge, 143 Ky. 368, 136 S. W. 875, 877, in the following language:

"We are of the opinion that in every action or proceeding pending in a court of justice, by whatever name it may be called, and without regard to the purpose of it, if either party is prevented by fraud, casualty, or misfortune from presenting his claim or defense, or from prosecuting an appeal from a judgment against him, if an appeal is allowed, he may have relief under Section 518 of the Code, unless the right to secure relief under this section is denied by express statute or necessary implication. It cannot be tolerated that by the judgment of a court of justice a party who is without fault and who has not been guilty of laches shall by fraud, casualty, or misfortune be denied the privilege to assert his claim or defense or the opportunity to prosecute an appeal from a judgment against him. Section 518 of the Code was intended to and does furnish a remedy whereby injustice and wrong may be prevented in the course of a judicial or other proceeding pending in court, and we want to make it broad enough to embrace every state of case in which injustice would be done except for the remedy which it affords."

However, this declaration of the broad scope of the proceeding is thus qualified:

"This section was designed to supplement, but not to supersede, other provisions authorizing motions for a new trial and allowing appeals, and can only be invoked by a party when the other remedies are not available."

This interpretative language as to the limitation of the remedy should not be too strictly or technically applied. Instances of application will be found where the remedy has been recognized although the ground for relief might have been availed of in the original case. At least in respect to some of the grounds specified in Section 518, the real distinction is not that of election of remedies but of re-litigation. These Code provisions do not authorize a mere retrial of issues; and that limitation is a rule of practice rather than an express statutory prohibition. Thus, in Ison v. Buskirk-Rutledge Lbr. Co., 205 Ky. 583, 266 S. W. 243, it is declared upon the author-

ity of other cases that while a litigant may enter a motion for a new trial and appeal from an adverse ruling and may simultaneously or after the appeal is decided proceed under Sections 518 and 520 of the Code to vacate the judgment, the right to so proceed is subject to the proviso that he had not availed himself of the same ground in the motion for a new trial. The litigant in that case had had a hearing of the same ground upon his motion for a new trial and so could not be allowed a retrial of the issue in a suit to vacate the judgment. See, also, Hargis Commercial Bank & Trust Company's Liquidating Agent v. Eversole, 255 Ky. 377, 74 S. W. (2d) 193.

The proceeding under Sections 518 and 520 (which prescribes the manner) is available more specially for the presentation of grounds for a new trial which did not exist or, if they did, were unknown to the party and he has a legal excuse for not having previously presented them. However, it is significant that, unlike a suit to vacate a judgment under Section 344, on the ground of newly discovered evidence, there is nothing in Section 518 or 520 restricting the right to proceed thereunder unless the plaintiff pleads and establishes that the fraud practiced by the successful party was not discovered by him until it was too late to question the judgment in the case in which it was rendered or that he did not have opportunity to raise it before the term expired.

The cases relied on in support of appellees'. argument that the orders on the motions made in the original cases to set aside the judgments bar the proceedings under Sections 518 and 520 are not in point. They relate to election of remedies or to suits under the Code provisions which dealt with conditions apparent on the record or with judgments that were only erroneous. See as to erroneous judgments, Combs v. Allen, 208 Ky. 519, 271 S. W. 598; King v. King's Ex'rs., 233 Ky. 538, 26 S. W. (2d) 30; as to clerical misprisions, Smith v. Patterson, 213 Ky. 142, 280 S. W. 930; Campbell v. First Nat. Bank of Barbourville, 244 Ky. 110, 50 S. W. (2d) 17. Apparently closer to the instant case, but not really so, is Dixon v. Riddle, 238 Ky. 722, 38 S. W. (2d) 715. One against whom a judgment had been rendered filed a motion to set it aside because she had not been before the court. She became ill and unable to attend to her case and the court refused her counsel time to make proof of failure of service of process. The motion was overrul-

ed. A suit in equity was later filed asking injunctive relief from enforcement of the judgment. It appeared there had been a decision on the motion and no appeal prosecuted. We held that the defendant should have pursued the course upon which she had started, in the manner outlined in the opinion, and that the order in the original case was res adjudicata of the suit in equity. The case is distinguishable primarily because it involved an alleged void judgment and Section 763 of the Code prescribes the remedy for relief from such a judgment —not Sections 518 and 520. Of the same class is Green v. Blankenship, 263 Ky. 29, 91 S. W. (2d), where a suit under Sections 518 and 520 was treated as equivalent to a proceeding under Section 763 and the relief was granted.

Regarding the broad scope and ultimate purpose of the provisions of Sections 518 and 520, as declared in Commonwealth ex rel. v. Weissinger, Judge, supra, and the fact that the proceeding partakes of the nature of a suit in equity, if indeed it is not altogether so (Reinicke v. Morse, Ky. 10 S. W. 468; Cooper v. Williamson, 198 Ky. 62 258 S. W. 245), if the conscience of the court calls for the granting of a new trial where the ground relied upon has not already been considered, and the aggrieved party may be reasonably excused for not having pursued a remedy available in the original case, justice demands that the rule of res adjudicata be not applied and that he be given a trial of his cause or his defense. Cf. Johnson v. Gernert Bros. Lumber Co. 255 Ky. 734, 75 S. W. (2d) 357. In the instant case there was filed by the parties themselves unsigned motions to vacate the judgments without stating any ground therefor. Particularly applicable is our language in Emison v. Carter, 7 Ky. Op. 487:

"We are not disposed to adjudge that a mere motion to set aside a judgment, with leave to make a defense, will preclude a party from afterwards filing a petition in equity to vacate the judgment upon the ground of fraud in obtaining it. There is nothing in the record showing the grounds relied on in the motion, and the fair inference is that it was not such as would deprive a court of equity of the power to vacate, when the facts alleged give that court jurisdiction."

Reverting to the evidence relating to the merits of

the plaintiffs' claims for new trials on the ground of fraud practiced by the defendants. The appellees say the real and only question is lack of authority of appellants' attorneys, Lester and Riedinger, to compromise and settle the cases. We agree that this record discloses the attorneys acted without authority. We think it justifies the conclusion they acted wrongfully. The rule is almost universal that an attorney, clothed with no other authority than that arising from his relationship, has no implied power to compromise and settle a client's claim or cause of action except, perhaps, when he is confronted with an emergency and prompt action is necessary to protect the interest of his client without an opportunity for consultation with him. Jenkins v. City of Bowling Green, 261 Ky. 679, 88 S. W. (2d) 692; 5 Am. Jur., Attorneys-at-Law, Section 98. We have many cases so holding. But there is more in the record than the mere lack of authority and wrongful action of the attorneys for the plaintiffs. If the adversary parties or their lawyer knew or in the exercise of reasonable diligence should have known of the absence of authority of the attorneys and cooperated with them in securing the judgments dismissing the cases as settled, they are chargeable with practicing fraud upon the attorneys' clients. It is not necessary that there should have been a wicked motive for if before a judgment was rendered a party or his lawyer said or did anything that prevented his adversary from having a fair trial and he shows prima facie that he has a good cause or defense, he is entitled to relief from the judgments under Sections 518 and 520 of the Code. Johnson v. Gernert Bros. Lumber Co., supra. An agreed judgment obtained by fraud may be vacated. Nicely v. Hickman, 188 Ky. 258, 221 S. W. 566.

Of the inferences of fraud reasonably deducible from the facts related, there are two particularly forceful. It seems to us they certainly bind the defendants to the unauthorized action of plaintiffs' attorneys. Having knowledge that the clients had refused to endorse their check, made payable to them and their attorneys, and thereby had repudiated the settlement, the defendants did the very unusual thing of paying the equivalent of cash to the court clerk, and then while it was in their power to stop it learned it was going into the hands of the attorneys whose action in settling the cases had been repudiated. Daly emphasizes in his testimony that he was gen-

eral claim attorney for several public utility companies and that he was always careful to see that releases were procured from parties whose claims he settled. In this instance he did not do that, but filed orders of dismissal in the circuit clerk's office before the releases were obtained; and, while he says he had nothing more to do with the matter, the cashier of the bank testified that he had consulted Daly about honoring the cashier's check because of the irregular endorsement and that Daly approved it, and, apparently, consented to paying the money to Lester and Riedinger. The circuit clerk testified that Daly later inquired about the order of dismissal, which had not then been actually filed but only lodged, and the judge directed the clerk to file it. This apparently was on the date of the later stamp, April 22nd. The parties are chargeable with knowledge of the law that the attorneys had no implied authority to settle the cases, and the circumstances surely brought notice to Daly of the plaintiffs' repudiation of the settlement.

We think the plaintiffs made out a prima facie case which authorized the court to vacate the judgments and grant them new trials.

The cases were properly tried as in equity, the testimony being heard in open court. The defendants chose to submit them on the plaintiffs' evidence although several of the defendants had testified as on cross examination, and their defense was at least partially disclosed thereby. Ordinarily, in reversing a judgment rendered in equity this court directs what entry shall be made, but it is fair that the defendants should be given an opportunity to develop their side of the case.

The judgments are reversed for consistent proceedings.