**Alma "Sissy" CLARK, Appellant,**

v.

**Foley L. BURDEN, Jones Buick GMC Trucks, Inc., Appellees.**

**No. 95–SC–572–DG.**

Supreme Court of Kentucky.

March 21, 1996.

James T. Kelley, Elizabethtown, for appellant.

Redford H. Coleman, Coleman & Stevens, Elizabethtown, for appellees.

LAMBERT, Justice.

■ With respect to compromise or settlement of a claim, final decision-making authority rests with the client. Kentucky Rules of Professional Conduct provide that "[a] lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter" (SCR 3.130–1.2(a)) and the rules require a lawyer to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation" (SCR 3.130–1.4(b)). Without authority from the client, a lawyer has no right to settle a case. 7 Am.Jur.2d *Attorneys at Law* § 154 (1980).

■ However, an attorney is an agent for the client with broad power to act for and on the client's behalf. This principle was articulated in *Daugherty v. Runner*, Ky.App., 581 S.W.2d 12 (1978), as follows:

> The relationship is generally that of principal and agent; however, the attorney is vested with powers superior to those of any ordinary agent because of the attorney's quasi-judicial status as an officer of the court; thus the attorney is responsible for the administration of justice in the public interest, a higher duty than any ordinary agent owes his principal. Since the relationship of attorney-client is one fiduciary in nature, the attorney has the duty to exercise in all his relationships with this client-principal the most scrupu-

lous honor, good faith and fidelity to his client's interest.

*Id.* at 16.

In view of the "superior" agency status of an attorney, and with due regard for the doctrine of apparent authority as explained in *Estell v. Barrickman*, Ky.App. 571 S.W.2d 650, 652 (1978), we must determine, notwithstanding the client's ultimate right to decide, whether an attorney may nevertheless bind a client to the settlement of a case. If we answer in the affirmative, the client's remedy, if a wrong has been committed, will be a civil action for damages against the attorney, and an attorney engaging in such unauthorized conduct might be subject to disciplinary action. If we answer in the negative, the power of an attorney to act on behalf of the client will be circumscribed and those with whom the attorney must deal may legitimately question whether the attorney possesses the necessary authority.

Appellant brought this action for personal injury damages. While litigation was pending, appellant's counsel[1] submitted a written settlement offer to counsel for appellees offering to accept the sum of $26,000. Appellees submitted a counteroffer of $23,000 and it was accepted by counsel for appellant. A short while later, final settlement documents and the agreed-upon sum of money were forwarded to appellant's counsel. Thereafter, the settlement documents were returned unexecuted and appellant's counsel informed appellees that the settlement was off. Appellees then moved to enforce the settlement agreement. *See General Motors Corp. v. Herald*, Ky., 833 S.W.2d 804 (1992).

The trial court held a hearing to determine whether a binding settlement agreement had come into existence. After hearing the parties' evidence and making findings of fact and conclusions of law, the trial court held that a settlement had been achieved. The trial court deemed it unnecessary to make particularized findings as to the actual authority counsel had from the client. It reasoned that the doctrine of apparent authority gave ap-

---

1. Appellant's counsel in this Court is her third lawyer in this case. Present counsel did not participate in the negotiations at issue here.

pellant's counsel power to bind her so that an enforceable agreement came into existence. The Court of Appeals affirmed the trial court, also relying upon apparent authority.

> Although we agree that an attorney must have authority from his client to settle his client's claim, [appellant's counsel] was cloaked, in his dealings with third parties, with apparent authority to settle Ms. Clark's personal injury claim.

Slip op. at 2–3.

As we analyze the case, the proper inquiry is whether the peculiar agency relationship between attorney and client is sufficiently comprehensive with respect to third parties to overcome the fundamental right of the client to ultimately decide upon the settlement. An important consideration is the extent to which those dealing with an attorney in such circumstances may be harmed by unauthorized offers or acceptances of settlement. If it should be determined that third parties who may be dealing with such attorneys would be substantially and adversely affected by unauthorized attorney settlements, then the client employing the attorney should be bound. On the other hand, if it is determined that no substantial harm will befall third parties, then ultimate control should remain with the client, notwithstanding purported settlements by an attorney. The foregoing is consistent with the general law of agency which allocates loss to the party who invested the agent with authority to initiate the transaction.

> The technical distinctions between implied, apparent and ostensible authority are immaterial where an innocent third party dealt with the agent as such and would suffer loss were the principal allowed to escape from the consequences of agency or of the situation which he caused or permitted.
>
> . . . .
>
> The law of estoppel steps in to prevent the escape from liability, for by his action or conduct—affirmative or negative—he induced or permitted the third person to put his trust in the agent's representations.

*American Nat. Red Cross v. Brandeis Mach. & Supply Co.*, 286 Ky. 665, 151 S.W.2d 445, 451 (1941) (citation omitted).

While attorneys have been held to be superior agents (*Daugherty v. Runner*, Ky.App., 581 S.W.2d 12, 16 (1978)), a firm line of authority holds that with respect to settlement, attorneys are without power to bind their clients. *DeLong v. Owsley's Ex'x*, 308 Ky. 128, 213 S.W.2d 806 (1948); *Fillhardt v. Schmidt*, 291 Ky. 668, 165 S.W.2d 155 (1942); *Shropshire v. Shropshire*, 282 Ky. 211, 138 S.W.2d 340 (1940); *Jenkins v. City of Bowling Green*, 261 Ky. 679, 88 S.W.2d 692 (1935); *Brown v. Bunger*, Ky., 43 S.W. 714 (1897). *See also* 7 Am.Jur.2d *Attorneys at Law* § 156 (1980), (which discloses that Kentucky case law is consistent with the general rule). These cases contain little reasoning to justify the rule stated, suggesting that the rendering courts regarded the rule as so manifest to be without any need for exposition. While the reasons for the rule are not persuasively expounded and fail to take account of the potential effect upon third parties, and while it would be possible to distinguish these cases from the case at bar, the fact remains that the rule is broad and unambiguous. As succinctly stated in *Fillhardt:*

> The rule is almost universal that an attorney, clothed with no other authority than that arising from his relationship, has no implied power to compromise and settle a client's claim or cause of action except, perhaps, when he is confronted with an emergency and prompt action is necessary to protect the interest of his client without an opportunity for consultation with him.

165 S.W.2d at 160. When this rule is considered alongside disciplinary rules SCR 3.130–1.2(a) and SCR 3.130–1.4(b), we are bound to conclude that in ordinary circumstances, express client authority is required. Without such authority, no enforceable settlement agreement may come into existence. Our recent decision in *Farmers Deposit Bank v. Ripato*, Ky., 760 S.W.2d 396 (1988), is not to the contrary for it was premised on the active participation by the represented parties in the negotiations. We noted that the attorney was not discharged until after the compromise had been reached and that the settlement took place under the clients' watchful eyes. Active participation in the

particulars of settlement may be deemed to create implied authority. *See also Combs' Adm'r v. Virginia Iron, Coal & Coke Co.,* 236 Ky. 524, 33 S.W.2d 649, 651 (1930), (holding that an unauthorized settlement may be ratified by the client, even by the client's silence; "It is the client's duty, having knowledge of the settlement, to express his disapproval within a reasonable time").

Notwithstanding the foregoing, we can conceive of circumstances in which the rights of third parties might be substantially and adversely affected by an attorney possessing apparent authority but who lacked actual authority. If such a contention were made, a court of equity would be empowered to fix responsibility where it belonged to prevent injustice. In most circumstances, however, express authority will be required and in the event of a dispute as to whether the client has given settlement authority, the trial court shall summarily decide the facts. In such a proceeding, the attorney-client privilege would not prevent the attorney from testifying as to the client's instructions regarding settlement. SCR 3.130–1.6(b).

■ In this opinion we have gone to considerable lengths to fully preserve the rights of the client to control the settlement or termination of litigation. At some point, however, the client must be charged with responsibility for having employed an attorney who failed to observe the requirements of fidelity to the client's wishes. That point, we believe, is when the rights of innocent third parties are adversely affected. It will be necessary to remand the case at bar to the trial court for reconsideration of the prior hearing record and for an additional hearing, if needed. The trial court must determine whether appellant gave her attorney express or actual authority to settle the case for $23,000. If the court finds that such authority was given, the settlement should be enforced. Even if the trial court finds that no such authority was given, if it should also find that appellees were substantially and adversely affected by their reliance upon the purported settlement, enforcement would be appropriate. On failure to find one or the other of the circumstances set forth herein-

above, the court should determine that no settlement came into existence.

We are not unconcerned with the possibility that this decision will alter an essential component of the administration of justice, the settlement of civil lawsuits. We have considered the argument that lawyers must be able to have complete trust in the representations of other lawyers with respect to settlement. We understand that one who is unscrupulous might attempt to gain a negotiating advantage by making, but later disavowing, a settlement offer or acceptance. We are comforted, however, in the knowledge that the vast majority of all Kentucky lawyers are entirely ethical. Regardless of what we say here, those lawyers would not think of settling a case without express client authority and certainly would not attempt to gain an advantage by unscrupulous negotiating tactics. Practicing lawyers (and judges) soon learn who among their colleagues lack trustworthiness and deal with them accordingly. In all but the rarest of circumstances, the settlement practices which have heretofore prevailed will continue.

The opinion of the Court of Appeals is reversed and this cause is remanded to the Hardin Circuit Court for further consistent proceedings.

STEPHENS, C.J., and GRAVES, STUMBO and WINTERSHEIMER, JJ., concur.

KING, J., dissents by separate opinion.

KING, Justice, dissenting.

Respectfully, I dissent.

I agree that an attorney must have express authority to settle a client's cause. However, I disagree with the majority's holding that without such authority no enforceable settlement agreement will come into existence. The rule is unjustified, against the mainstream of Kentucky law on apparent authority, and will adversely affect the administration of justice. Realizing the harshness of this rule on innocent third parties, the Court attempts to craft an exception allowing the enforcement of such an agreement when the attorney possesses apparent authority and the third party has been "sub-

stantially and adversely affected." The exception to the rule, although well-intentioned, is unworkable.

Although a lawyer is ethically required to have the client's consent before resolving a client's case, when a settlement is reached without this consent, the settlement should be enforced under the doctrine of apparent authority. Upon a showing by the client that the attorney lacked express authorization, the attorney should be required to bear the cost of any financial losses sustained by the client as a result of the unauthorized act.

The basis of the majority opinion is reliance upon a line of cases beginning with *Brown v. Bunger,* Ky., 43 S.W. 714 (1897) and continuing to *DeLong v. Owsley's Ex'x,* 308 Ky. 128, 213 S.W.2d 806 (1948). Essentially these cases hold that, absent express authority from a client, an attorney lacks authority to settle a client's case. Although the majority correctly observes that these cases provide no basis or explanation for the rule and ignore the deleterious effect on third parties, the Court, on the basis of stare decisis, perpetuates this rule.

Rules of law affect people's lives. If no clear, cogent reason can be advanced for a rule of law, one must question its validity. Except for precedential deference, no justification can be advanced for following the so-called "*Brown* rule." *Hilen v. Hays,* Ky., 673 S.W.2d 713, 717 (1984), discussed the appropriate role of precedent:

> In broad outline, stare decisis directs us to "stand by" our previous decisions unless there are sound legal reasons to the contrary. Every case must be decided with a respect for precedent. But the doctrine of stare decisis does not commit us to the sanctification of ancient fallacy.

There are compelling reasons why *Brown v. Bunger, supra,* and its progeny should be overruled and forever discarded.

Once an attorney commences representing a client, important relationships, other than that between the attorney and client, arise. One such relationship is that between the attorney (acting as agent for the client) and the opposing party (or its attorney). The *Brown* rule fails to acknowledge the multiple roles of an attorney and limits its focus exclusively to the relationship between the attorney and client. Accordingly, it fails to address the real issue presented in this case.

It is indisputable that, in the relationship between attorney and client, the attorney should first obtain the client's consent before settling the client's case. However, the issue for consideration here is who should bear the loss when an attorney has settled a case without obtaining the client's consent. In the relationship between the innocent third party and the settling attorney, the third party should have the right to rely upon the apparent authority of the attorney to settle the case. Because it focusses solely on the initial attorney-client relationship, the *Brown* rule allocates the risk of unauthorized settlement to the innocent third party. That risk should be placed on the client who hired the settling attorney and ultimately on that attorney.

The majority also relies on the Kentucky Rules of Professional Conduct for the rule that an attorney may not settle a case without the client's express authority. However, that rule only governs the conduct between the attorney and client. The Rules of Professional Conduct acknowledge other relationships which necessarily arise from the attorney-client relationship and set standards for those relationships. See for example Rule 3.3 (Candor Toward the Tribunal), Rule 3.4 (Fairness to Opposing Party and Counsel) and Rule 4.1 (Truthfulness in Statements to Others).

The doctrine of apparent authority has long been the law of Kentucky.

> It has been held that a principal is bound by the acts of an agent within the apparent scope of authority although the authority may in fact be limited, if one dealing with the agent is ignorant of limitations upon his authority. . . . [W]here one of two parties must suffer loss through acts of an agent the loss should fall upon the one who authorized the agent to act rather than the innocent third party unless the agent is acting *beyond the scope of his apparent authority.*

*Tennessee Gas & Transmission Co. v. Cooke,* 306 Ky. 160, 206 S.W.2d 491 (1947) (emphasis added).

No doctrine is better settled than that a principal is bound by the act of his appointed or recognized agent when it is within that sphere [of the agent's apparent authority]. Concretely, if the principal has held out that an agent is authorized to buy goods for him he is bound by the purchases made which are fairly and reasonably within the class specifically authorized and within the apparent scope of the authority where the seller is ignorant of any limitations upon the character of goods to be bought or the scope of authority.... It matters not that the agent acts contrary to the instructions of his principal where a third person with whom he deals is ignorant of his circumscribed authority or has no reason to believe he is exceeding it or violating the instructions of his principal.... If that were not the rule, commercial relations would be constantly disturbed and chaos result.

*American Nat. Red Cross v. Brandeis Machinery & Supply Co.,* 286 Ky. 665, 151 S.W.2d 445, 451 (1941) (citations omitted).

When a client employs counsel and counsel investigates the facts, files suit, takes proof, and enters into negotiations, the client clothes the attorney with apparent authority to settle the claim. Kentucky law recognizes an attorney is vested with powers superior to those of other agents because of the attorney's quasi-judicial status. *Daugherty v. Runner,* Ky.App., 581 S.W.2d 12 (1978). Accordingly, the client should be bound by the actions of the agent.

The rule announced in *Brown* and followed by the majority is also impractical. Our system of justice is already overburdened. There are nearly 12,000 attorneys licensed to practice law in our Commonwealth. Each year they collectively negotiate hundreds of thousands of legal matters. Not being able to rely upon the apparent authority of opposing counsel, cautious lawyers will now demand proof that opposing counsel has the express consent of the client for each offer and counter-offer. The practical impact of this is considerable. Telephone and person to person negotiations will only constitute prefatory discussions. The settlement process will take longer and further court delays will result.

The majority recognizes that an innocent party could be "substantially and adversely affected by an attorney possessing apparent authority but who lacked actual authority" and seeks to fashion a remedy for those injured. Unfortunately, for the most part, this remedy is illusory.

Innocent third parties should be given the benefit of their bargain. Although they may be "substantially and adversely affected" rarely will they initially be able to meet that test. By the time they can meet that standard, it might be too late. Two examples, with parties "X" and "Y," illustrate the ineffectiveness of the remedy fashioned by the court.

First, assume a case is set for trial. The outcome will probably be determined by the testimony of a particular witness. The case is "settled" the day before the trial. Within days the settlement is renounced because express permission was not given to X's attorney. The matter is set for trial at a later date. Under the "substantial and adversely affected" test, Y would be unable to enforce the settlement. Subsequently, the key witness unexpectedly dies, moves, or otherwise becomes unavailable, the case is tried, and the jury finds against Y. Will the court vacate the jury verdict and enforce the original settlement?

In today's world many cases are determined by a "battle of the experts." Imagine a second case in which X agrees to settle, recognizing the small chance of success at a jury trial because of lack of appropriate expert witnesses. Days later, the settlement is renounced due to lack of express permission to X's attorney. By the time the case is tried X has a full complement of experts and prevails on the merits of the case. Has Y been "substantially and adversely affected?" Will the jury verdict be vacated and the settlement enforced?

The majority opinion and all the decisions upon which it relies fail to state any reason why attorneys should be treated differently

than other agents. The rule for attorneys unfairly allocates the risk of loss to an innocent third party. In a fair and just society, innocent parties should not bear the cost of wrongdoers. People who commit wrong should bear the consequences of their actions. The actions of an attorney, cloaked in apparent authority, should bind the principal who hired that attorney. The principal has adequate relief against the attorney, who should ultimately bear the ethical and financial consequences of settling a case without the client's express authority. This rule would place the full responsibility where it belongs, on the person who committed the wrong. To make an innocent third party bear this risk is intrinsically unfair.